The STATE of Texas, Appellant

v.

Jose Garcia VASQUEZ, Appellee.

No. 14–06–00381–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 28, 2007.

Randy McDonald, Houston, for State.

Kristen Moore, Richmond, for Appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

In this intoxication-manslaughter case, we decide whether the trial court erred in suppressing the results of tests performed on a defendant's blood sample. The trial court granted a pre-trial motion to suppress this evidence based on the trial court's conclusion that the State violated the Texas Constitution's Due Course of Law Clause when the State destroyed the blood sample before trial. Contrary to the trial court's ruling, we conclude that, in this context, the Texas Constitution's Due Course of Law Clause provides the same protection as the United States Constitution's Due Process Clause. Because the blood sample was not "material, exculpatory evidence" but only "potentially useful evidence," under both of these constitutional provisions, the defendant/appellee had to show that the State destroyed his blood sample in bad faith. Because there is no evidence of bad faith, we reverse the trial court's order suppressing the test results.

## I. FACTUAL AND PROCEDURAL BACKGROUND

While driving his vehicle on July 26, 2003, appellee Jose Garcia Vasquez collided with another vehicle, resulting in the death of Randy Clark. Two hours after the collision, Vasquez's blood was drawn and thereafter tested for alcohol. The test results indicated that Vasquez's blood-alcohol level was .12, which is above the legal limit for operation of a motor vehicle. A few months later, on October 17, 2003, Vasquez was charged with the felony offense of intoxication manslaughter.

Trial was initially set for April 13, 2004, but, by agreement, the trial date was reset to June 22, 2004, and then reset again for October 11, 2005. In the interim, Robert Prince, a technician with the Texas Department of Public Safety Crime Laboratory in Houston, Texas (hereinafter "DPS Laboratory"), sent a letter dated September 8, 2003, to Trooper Alfred Bee of the Texas Department of Public Safety Highway Patrol. The letter stated that Vasquez's blood sample "contained .12 grams of alcohol per 100 ml" and that the "evidence will be retained until notified of the disposition." About a year later, on September 20, 2004, before the case went to trial, Trooper Bee signed a form authorizing the destruction of the blood sample. He marked the "guilty" and "destroy" boxes on the form even though the case had not yet been tried. Trooper Bee later explained that he signed this form because "someone at the District Attorney's office" informed him, during a telephone conversation, that Vasquez had been found guilty. On November 5, 2004, upon Trooper Bee's recommendation, technicians Brenda

Himes and Robert Prince of the DPS Laboratory destroyed Vasquez's blood sample.

On September 13, 2005, almost two years after his indictment, Vasquez filed a "Motion for Discovery of Experts and Inspection" requesting the State to disclose the names of its experts, including experts expected to testify on Vasquez's intoxication, the results of any blood tests, and any expert opinions regarding extrapolations of the results of the blood tests. On the same day, Vasquez also filed his first motion to suppress medical records and any blood-test results. Vasquez did not inquire about the blood sample or request its production for independent testing. A few weeks later, on September 30, 2005, Vasquez filed an unopposed motion to continue the October 11, 2005 trial setting because of another conflicting trial that had been reset due to Hurricane Rita. Trial was reset again for February 28, 2006. Shortly before that trial setting, the trial court conducted a pre-trial conference and considered various pre-trial matters, including Vasquez's motion to suppress the blood-test results. At that time, Vasquez's counsel indicated that he might want to have a defense expert review the blood-test results and perhaps even retest the blood "if it was still available." However, Vasquez did not file a motion seeking to independently test the blood or make any further inquiry. Instead, Vasquez asked about the possibility of discussing the blood-test results with the State's expert, Robert Prince. Without a formal ruling from the trial court, the State agreed to make Prince available for conference and to produce the State's file relating to the blood-test results. Both parties indicated readiness to commence trial.

As agreed, a few days after the pre-trial conference, Vasquez's counsel conferred with Prince, who, in the course of discussion, revealed that Vasquez's blood sample had been destroyed. Upon hearing this news, Vasquez, for the first time in three years, filed a "Motion to Discover, Inspect and Independently Test the Blood Evidence." He also filed a separate motion to suppress the results of all tests performed on his blood sample, alleging that the State's destruction of the blood sample violated his rights under the United States Constitution's Due Process Clause ("Due Process Clause") and also under the Due Course of Law Clause in Article I, Section 19 of the Texas Constitution ("Due Course of Law Clause"). On April 10, 2006, the trial court held a hearing on these motions and then took the matter under advisement pending its review of the evidence and case law. The following week, the trial court issued a written order suppressing "evidence in the medical records and the analysis of the blood evidence done by the Department of Public Safety laboratory relating to the blood alcohol content of defendant'[s] blood."

In its April 17, 2006 order, the trial court concluded that the State destroyed the blood sample intentionally, knowingly, and purposefully, but not in bad faith. The trial court ruled that the State had a duty to preserve the blood evidence. The trial court found that Vasquez was unable to obtain comparable evidence by other reasonably available means and that the blood sample was "potentially useful to the defendant." The State requested and received a hearing to clarify the trial court's ruling on the motion to suppress. At that hearing, on April 20, 2006, the trial court indicated that the destruction of the blood evidence was intentional, in that the State intended to destroy the blood sample, but the court found no bad faith on the part of the State because the blood sample was destroyed based on the receipt of incorrect information. The trial court stated at the hearing that its ruling was based on the legal standard articulated by the Waco Court of Appeals in *Pena v. State*, 166

S.W.3d 274 (Tex.App.-Waco 2005), *vacated by* 191 S.W.3d 133, 145–46 (Tex.Crim.App. 2006), an opinion the Court of Criminal Appeals has since vacated.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999). An abuse of discretion occurs when the trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim.App.1992). The trial court's findings of fact are given almost total deference, and in the absence of explicit findings, we presume the trial court made whatever appropriate implicit findings are supported by the record. *Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000). However, the application of the relevant law to the facts is reviewed de novo. *Id.* at 327. Likewise, when the facts are undisputed and we are presented with a pure question of law, de novo review is proper. *Oles,* 993 S.W.2d at 106. The trial court's ruling must be upheld if it is correct under any theory of law applicable to the case. *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim.App.2005).

## III. ANALYSIS

In challenging the trial court's ruling on Vasquez's motion to suppress, the State asserts the trial court abused its discretion in suppressing the blood-test results because this evidence is not exculpatory and because there is no evidence of bad faith.[1] The State argues that the Due Course of

Law Clause affords no greater protection than the Due Process Clause.

In addressing whether the pre-trial destruction of evidence constitutes a denial of due process of law under the United States Constitution, the Supreme Court of the United States has drawn a distinction between "material, exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). A federal due-process violation occurs whenever a state suppresses or fails to disclose material, exculpatory evidence, regardless of whether the state acted in bad faith. *Illinois v. Fisher,* 540 U.S. 544, 547–48, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004). However, the United States Supreme Court has held that, if a defendant seeks to prove a federal due-process violation based on a state's destruction of potentially useful evidence, as opposed to material, exculpatory evidence, the defendant must show the state acted in bad faith in destroying the evidence.[2] *Fisher,* 540 U.S. at 547–48, 124 S.Ct. at 1202; *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. at 337. The *Youngblood* court described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* 488 U.S. at 57–58, 109 S.Ct. at 337. The State's testing showed that the blood sample at issue in this case was inculpatory, not exculpatory. Even if Vasquez asserts that further testing would have produced exculpatory results, on this record, nothing more can be said of the

1. *As thus far there has been no trial, this appeal presents no issue regarding how the trial court should instruct any jury before whom this case may be tried.*

2. The State in its appellate brief in this case and various Texas intermediate courts in their opinions have failed to note this distinction

and incorrectly have indicated that, to show a due-process violation regarding destroyed evidence, a defendant must show both that the evidence was (1) favorable and material and (2) destroyed in bad faith. *See, e.g., McDonald v. State,* 863 S.W.2d 541, 543 (Tex. App.-Houston [1st Dist.] 1993, no pet.).

blood sample than that it could have been subjected to tests, the results of which might have exonerated Vasquez. Therefore, the blood sample the State destroyed is potentially useful evidence rather than material, exculpatory evidence. Because the evidence the State destroyed was potentially useful evidence and because the trial court found that it was not destroyed in bad faith, under *Youngblood,* the trial court would have had to deny Vasquez's motion to suppress had that been the only basis asserted in the motion.

Vasquez, however, also sought to suppress the evidence in question based on the Due Course of Law Clause, and the trial court indicated that it was following the Waco Court of Appeals's opinion in *Pena v. State* in granting Vasquez's motion to suppress. *See* 166 S.W.3d 274 (Tex. App.-Waco 2005) (hereinafter, *"Pena I"*), *vacated,* 191 S.W.3d 133, 145–46 (Tex. Crim.App.2006) (vacating and remanding opinion back to court of appeals). In *Pena I,* the Waco Court of Appeals held that the Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *See* U.S. Const. amends. V, XIV, § 1; Tex. Const. art. I, § 19; *Pena I,* 166 S.W.3d at 278–82. Based on this conclusion, the *Pena I* court held that under the Due Course of Law Clause, if the state destroys potentially useful evidence and the defendant would be unable to obtain comparable evidence by other reasonably available means, then, upon a motion by the defendant to determine the consequences, if any, of this destruction, the trial court must consider the following factors:

(1) the degree of negligence involved,

(2) the significance of the destroyed evidence considered in light of the proba-

tive value and reliability of secondary evidence that remains available, and

(3) the sufficiency of the other evidence used at trial to support the conviction.

*Pena I,* 166 S.W.3d at 281–82. According to *Pena I,* if, after considering these factors, the trial court concludes that a trial without the missing evidence would be fundamentally unfair, the trial court may then determine the appropriate measures needed to protect the defendant's rights, such as instructing the jurors that they may infer that the missing evidence would have been favorable to the defense or dismissing the charges. Considering these three factors, the Waco Court of Appeals held that the trial court had violated Pena's rights under the Due Course of Law Clause, even though there was no evidence of bad faith on the part of law enforcement officials. *Id.* at 280–83. Therefore, the *Pena I* court reversed the trial court's judgment and remanded for further proceedings.[3] *Id.* at 283.

At the time of the April 20, 2006 hearing in the instant case, *Pena I* was still pending before the Court of Criminal Appeals. However, six days after this hearing, the Court of Criminal Appeals issued its opinion in *Pena II* and vacated the judgment in *Pena I. See Pena II,* 191 S.W.3d at 145–46. The Court of Criminal Appeals held that the Waco Court of Appeals erred by reviewing unassigned error regarding the Due Course of Law Clause without requesting additional briefing thereon. *See id.*

On remand, the Waco Court of Appeals in *Pena III* again held that the Due Course of Law Clause provides a greater level of protection than the Due Process Clause. *See* U.S. Const. amends. V, XIV, § 1; Tex. Const. art. I, § 19; *Pena v.*

---

**3.** The *Pena I* court apparently left it to the trial court on remand to decide the appropriate remedy for the "violation of the Texas

Constitution" the *Pena I* court concluded had occurred. *Id.* at 283.

*State,* 226 S.W.3d 634, 637-653 (Tex.App.-Waco, 2007, pet. filed). The *Pena III* court held that, under the Due Course of Law Clause, the State has a duty to preserve both material, exculpatory evidence and potentially useful evidence. *See Pena III,* 226 S.W.3d at 650. To determine whether the loss or destruction of potentially useful evidence violates the Due Course of Law Clause, the *Pena III* court adopted the legal standard employed by the Delaware Supreme Court for the due process protections of the Delaware Constitution. *See id.* at 650-653. Under this standard, to determine if the state has violated the defendant's right to due process under the state constitution, courts balance the following factors:

(1) whether the evidence would have been subject to discovery or disclosure,

(2) if so, whether the state had a duty to preserve the evidence, and

(3) if there was a duty to preserve, whether that duty was breached, and what consequences should flow from the breach.

*See id.* at 650-651. With regard to the third element of this analysis, courts draw a balance between the nature of the state's conduct and the degree of prejudice to the accused. *See id.* Under this analysis, the state must justify the conduct of the police or prosecutor, and the defendant must show how his defense was impaired by loss of the evidence. *See id.* In general terms, courts applying this analysis should consider:

(1) the degree of negligence or bad faith involved,

(2) the importance of the lost evidence, and

(3) the sufficiency of the other evidence adduced at the trial to sustain the conviction.

*See id.* at 651. After applying this analysis to determine if the state violated the Due Course of Law Clause, a court finding a violation then would have to perform a constitutional harm analysis. *See id.* at 654. If a court determines then that harmful constitutional error has occurred, the court should choose from three potential remedies for the loss or destruction of this evidence: (1) dismissal, (2) exclusion of related evidence, or (3) an adverse-inference jury instruction. *See id.* at 655. Applying this analysis, the *Pena III* court reversed and remanded based on its determination that harmful constitutional error had occurred and that the appropriate remedy was an adverse-inference jury instruction. *See id.* at 653-656.

■ To adjudicate this appeal, we must determine whether the Due Course of Law Clause provides a greater level of protection than the Due Process Clause regarding the State's pre-trial destruction of potentially useful evidence in a criminal prosecution. Beginning with the relevant texts of the two clauses, we note that, under the Due Course of Law Clause, "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Under the Due Process Clause, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1. The Texas Constitution uses the words "due course of the law of the land" instead of "due process of law," and the Due Process Clause does not specifically mention disfranchisement. Otherwise, the wording of the two provisions is substantially similar. Disfranchisement means "the act of taking away the right to vote in public elections from a citizen or class of citizens." BLACK'S LAW DICTIONARY 480 (7th ed.1999). Vasquez as-

serts that the reference to disfranchisement is a textual indication of a broader scope to the Due Course of Law Clause. However, presuming without deciding that disfranchisement is not one of the privileges or immunities covered by the Due Process Clause, that would mean only that the Due Course of Law Clause applies to more types of deprivations than does the Due Process Clause. Because this case involves an attempt to deprive Vasquez of his liberty, this potential difference in the two provisions is not relevant to the issue at hand. The State's attempt to deprive Vasquez of his liberty triggers the requirement of due course of law under the Texas Constitution and due process under the United States Constitution. Therefore, the only words from the two constitutions that relate to the scope of the protections provided are "due course of the law of the land" and "due process of law." Black's Law Dictionary defines "due course of law" as a synonym of "due process." *See* BLACK'S LAW DICTIONARY 516 (7th ed.1999). Furthermore, this court has held that the Due Course of Law Clause generally does not provide any greater protection than the Due Process Clause.[4] *See Rodriguez v. State*, 21 S.W.3d 562, 568 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

In addition, eight other Texas courts of appeals, including the Waco Court of Appeals, have held that the Due Course of Law Clause does not provide a greater level of protection than the Due Process Clause regarding the State's loss or destruction of evidence in a criminal prosecution. *See Alvarado v. State*, No. 07-06-0086-CR, 2006 WL 2860973, at *3 (Tex. App.-Amarillo Oct.9, 2006, no pet.) (not designated for publication) (declining to follow decision in *Pena I* and holding that

Due Process Clause and Due Course of Law Clause provide the same protection as to the state's destruction of potentially useful evidence); *McGee v. State*, 210 S.W.3d 702, 705 (Tex.App.-Eastland 2006, no pet.) (same); *Salazar v. State*, 185 S.W.3d 90, 92 (Tex.App.-San Antonio 2005, no pet.) (same); *Jackson v. State*, 50 S.W.3d 579, 588–89 (Tex.App.-Fort Worth 2001, pet. ref'd) (holding that both Due Course of Law Clause and Due Process Clause require showing of bad faith by state in failing to preserve potentially useful evidence); *Williams v. State*, 946 S.W.2d 886, 893 & n. 4 (Tex.App.-Waco 1997, no pet.) (concluding that state's loss of videotape showing appellant's performance of sobriety tests did not violate Due Process Clause or Due Course of Law Clause because there was no evidence of bad faith by state); *Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (holding that state's erasing of videotape of sobriety tests did not violate Due Process Clause or Due Course of Law Clause because there was no evidence of bad faith by state); *State v. Rudd*, 871 S.W.2d 530, 532–33 (Tex.App.-Dallas 1994, no pet.) (holding that Due Process Clause and Due Course of Law Clause provide the same protection as to state's destruction of potentially useful evidence); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex.App.-Austin 1990, no pet.) (same as *Jackson*) *but see Pena III*, 2007 WL 1289426, at 637-651; *Pena I*, 166 S.W.3d at 278–82.

■ Other than the Waco Court of Appeals's opinions in *Pena I and Pena III*, no Texas appellate opinion contradicts the above precedents from eight intermediate courts. In *Pena III*, the Waco Court of Appeals acknowledged that its holding

---

**4.** The Supreme Court of Texas also has stated that the language of these two clauses is "nearly identical" and that there is no mean-

ingful distinction between "due course" and "due process." *See Univ. of Texas Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995).

contradicts the text of the Due Course of Law Clause, the intent of the framers of the Texas Constitution, the holdings of seven Texas courts of appeals, and decisions in twenty-three other states. *See Pena III*, 2007 WL 1289426, at 638-642, 646. Nonetheless, the evolution of due process jurisprudence, practical considerations, and considerations of "fundamental fairness" convinced the *Pena III* court to adopt broader protections under the Due Course of Law Clause and to follow the decisions of courts in twelve other states in cases interpreting those states' constitutions. *See id.* at 637-653. After considering the opinions in *Pena I* and *Pena III*, we respectfully decline to follow them. We agree with the decisions of the eight Texas courts of appeals which hold that the Due Course of Law Clause provides the same protection as the Due Process Clause regarding the State's destruction of potentially useful evidence in a criminal prosecution. Therefore, to show a violation, Vasquez had to have shown that the State acted in bad faith. *Fisher*, 540 U.S. at 547–48, 124 S.Ct. at 1202; *Youngblood*, 488 U.S. at 57–58, 109 S.Ct. at 337. However, the trial court found that the State did not act in bad faith in destroying the evidence in question, and there is no evidence to the contrary in our record. Accordingly, the trial court erred in finding a violation of the Due Course of Law Clause and in granting Vasquez's motion to suppress.

## IV. CONCLUSION

Unquestionably, the State has an important duty to preserve evidence in its possession. It is incumbent upon the State to act diligently and carefully in preserving blood and other biological evidence for the accused's use in pending or reasonably foreseeable litigation. Because preserved evidence can help solve cases and exonerate the innocent, law enforcement officials should take extra precautions to ensure that all procedures are followed carefully before destroying evidence. Safeguarding biological evidence in criminal cases is crucial because it can provide the best evidence of innocence or guilt. Likewise, the failure to preserve biological evidence is problematic not only because it deprives the accused of the opportunity to test the evidence but also because the untimely destruction of potentially useful evidence tends to undermine the integrity of our system of justice. Nonetheless, not all failures to preserve evidence in criminal cases result in the deprivation of constitutional rights.

The text of the Due Process Clause and the Due Course of Law Clause, as well as many Texas court opinions interpreting them, show that the respective provisions from our federal and state constitutions provide the same protections in this context. Because the sole basis for the trial court's ruling was an incorrect legal conclusion (based on the Waco Court of Appeals's opinion in *Pena I*) that the Due Course of Law Clause provides greater protection than its federal counterpart, the trial court erred in suppressing the evidence, and we must reverse the trial court's order. Although this court by no means condones the pre-trial destruction of evidence (exculpatory or otherwise) without prior notice to the defendant, the law and the record evidence compel us to sustain the State's sole issue, reverse the trial court's order granting the motion to suppress, and remand this case to the trial court for further proceedings consistent with this opinion.

SEYMORE, J., concurring.

CHARLES SEYMORE, Justice, concurring.

I concur in the result. Under *Illinois v. Fisher* and *Arizona v. Youngblood,* absent bad faith, destruction of "potentially use-

ful" evidence does not constitute a violation of due process of law under the Federal Constitution. *See* 540 U.S. 544, 547–48, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004) (per curiam); 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). As noted by the majority, most intermediate appellate courts interpreting the due course of law clause of the Texas Constitution hold the clause offers no greater protection than does the due process clause of the Federal Constitution. *See* majority op. at 750 (citing cases). Thus, I agree that suppression of the interpretive evidence is not constitutionally mandated in this case. I write separately, however, to express my concern about limited relief available to defendants who must confront expert testimony interpreting tests conducted by the State on physical evidence the State has lost or destroyed. It is my considered opinion that the trial court may exercise its broad discretion to employ a spoliation instruction in such cases.

The instant case arises at a time when Texas has achieved an international reputation for its flawed crime lab processes, misrepresented results, and lost or destroyed evidence. *See, e.g.,* Amnesty International, *USA(Texas): Death penalty/Legal concern, Willie Marcel Shannon (m),* Nov. 2, 2006, http://web.amnesty.org/library/index/ENGAMR511672006?open & of=ENG-USA (last visited June 13, 2007) (referring to Houston Police Department's 1997 destruction of DNA evidence); RePRIEVE ANNUAL REPORT 2004 at 10, http://www.reprieve.org.uk/images/AnnualReport.pdf (last visited June 18, 2007) (in report of United Kingdom charity protecting the human rights of people facing the death penalty, describing case of investigation raising further questions about reliability of DNA testing at Houston Crime Lab).[1] In this milieu, one cannot presume the reliability of the State's evidence purporting to provide or interpret the results of forensic tests on tangible materials. *See* Ellen Marrus, *Suspicious Finds-How to Make the Crime Lab Come Clean,* Hous. Chron., June 16, 2006, http://www.chron.com/disp/story.mpl/editorial/outlook/4896319.html (last visited June 18, 2007) (arguing placement of crime labs within enforcement agencies is one factor contributing to falsification of evidence nationally). A defendant therefore has a legitimate interest in conducting his own tests on any sample the State may use to gain a conviction. He also has statutory authorization to do so. *See Gabriel v. State,* 900 S.W.2d 721, 722 (Tex.Crim.App. 1995) (citing Texas Code of Criminal Procedure article 39.14 for proposition, to rebut expert's chemist's conclusion all baggies contained cocaine, defendant could have conducted independent tests on substances contained in baggies not included in State's random tests). If the State intends to use physical evidence it alone has

---

1. *See also Pena v. State,* 226 S.W.3d 634, 646 (Tex.App.-Waco, 2007, pet. filed) (citing examples of wrongful Texas convictions based on faulty DNA identification evidence); Roma Khanna & Steve McVicker, *Doubt Cast on Hundreds More Cases from HPD Lab,* June 14, 2007, at A1, A21 (describing events at the Houston Police Department Crime Lab from December 2002 until present); Jordan Smith, *Anthony Graves Update: Evidence Reappears,* The Austin Chron., May 11, 2007, http://www.austinchronicle.com/gyrobase/Issue/story?oid=oid:473702 (last visited June 13, 2007) (describing discovery of cache of evidence in welded-shut jail cell); Jim Kennett, *Houston Crime Lab's Fake Results May Undermine Prosecutors,* http://www.bloomberg.com/apps/news?pid=10000103 & sid =aR0VRkE32Te0 & refer=us (last visited June 13, 2007) (referring to investigator's report of "faked results" by crime lab chemists); Barbara Bradley, *Profile: DNA Testing in Crime Cases Causing Distrust in the Criminal Justice System,* (NPR Morning Edition, Aug. 29, 2000), *transcript available at* 2000 WLNR 9636095 (describing destruction of fifty rape kits in Texas after prisoner was exonerated on basis of DNA tests).

tested, I join the majority in concluding the State has a responsibility to preserve that evidence.[2]

At present, however, the State has little incentive to prevent accidental loss or destruction of inculpatory evidence a defendant might want to subject to independent testing. Such evidence is deemed only potentially useful evidence—"evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood,* 488 U.S. at 57, 109 S.Ct. at 337. Under *Fisher* and *Youngblood,* the due process clause provides a defendant with no protection and no remedy when the State destroys or loses potentially useful evidence but does not act in bad faith. *See Fisher,* 540 U.S. at 547–48, 124 S.Ct. at 1202; *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. at 337. Absent bad faith, a due process violation occurs only when the State loses or destroys

material, exculpatory evidence. *See Fisher,* 540 U.S. at 547–48, 124 S.Ct. at 1202. Similarly, to be entitled to a spoliation instruction allowing the jury to infer lost or destroyed evidence would have produced a result favorable to the defense, a criminal defendant must affirmatively show the evidence was favorable and material to the defense. *White v. State,* 125 S.W.3d 41, 43–44 (Tex.App.-Houston [14th Dist.] 2003), pet. ref'd, 149 S.W.3d 159 (Tex.Crim.App.2004).[3] Given these limitations, a spoliation instruction would rarely, if ever, be useful to a criminal defendant because, if the lost or destroyed evidence were material and exculpatory, he would have a more meaningful remedy under the due process clause.

A spoliation instruction, however, should not be limited to an adverse inference that the lost or missing evidence is favorable to the defendant. Although the evidentiary function is important, a spoliation instruc-

**2.** Commendably, the Texas Legislature has acknowledged and partially responded to problems with the testing of bodily material. Texas Code of Criminal Procedure chapter 64 provides for post-conviction DNA testing of evidence containing biological material. *See* TEX.CODE CRIM. PROC. ANN. arts. 64.01–.05 (Vernon 2006). "In a criminal case in which a defendant is convicted," Texas Code of Criminal Procedure article 38.43 requires the State to "ensure the preservation of evidence" containing biological material relating to the identity of the offender. Tex.Code Crim. Proc. Ann. art. 38.43(a) (Vernon Supp.2006). Article 38.43 applies to evidence that (1) was in the State's possession during prosecution of the case and (2) "at the time of conviction was known to contain biological material that if subjected to scientific testing would more likely than not ... establish the identity of the person committing the offense; or ... exclude a person from the group of persons who could have committed the offense." *Id.* art. 38.43(b). I have two responses to this legislation.

First, I interpret the State's post-conviction duty to preserve evidence containing biological material, a fortiori, to create a duty to

preserve such evidence prior to, and during, the prosecution of the case. Were it otherwise, Chapter 64 and article 38.43 would be hollow assurances indeed.

Second, I urge the legislature to extend the preservation duty to all physical evidence when (1) the State is the sole agency testing the evidence and (2) the evidence is essential to establishing an element of the offense. Establishing the elements of the offense and the defendant's identity are equally part of the State's case. *See Jones v. State,* 687 S.W.2d 430, 432 (Tex. App.-Houston [14th Dist.] 1985, no pet.) (stating first element of a crime is that there exist a person who commits the offense). I can think of no principled reason why the State's duty to preserve evidence of the elements should differ from its duty to preserve evidence of identity.

**3.** In the most recent legislature, Representative Turner introduced a bill requiring a trial court to give an adverse inference spoliation instruction when evidence was unavailable in a criminal case because the evidence was lost or destroyed while in the State's possession. Tex. H.B. 1144, 80th Leg., R.S. (2007). The bill was referred to committee. H.J. of Tex. 80th Leg., R.S.414 (2007).

tion serves other purposes as well. As Justice Baker explained in the civil context: "Remedies for the spoliation of evidence serve three purposes. First, they punish the spoliator for destroying relevant evidence. Second, they deter future spoliators. And third, perhaps most importantly, they serve an evidentiary function." *Trevino v. Ortega*, 969 S.W.2d 950, 954 (Tex.1998) (Baker, J., concurring) (citations omitted).

Arguably, a trial court should give an adverse inference instruction only when there is some indication the spoliator acted in bad faith. *See United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000) ("An adverse inference drawn from the destruction of records is predicated on bad conduct."); *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979) ("Neither the rationale of the spoliation inference nor any authorities found support submission of the inference in the case of unintentional destruction."); *see also State v. Hartsfield*, 681 N.W.2d 626, 632–33 (Iowa 2004) (indicating, in order for destruction to be intentional, factfinder must be able to conclude State's actions were an admission evidence was unfavorable to its case); *but see Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) ("While allowing a court to hold a party accountable for negligent as well as intentional spoliation may appear inconsistent with the punitive purpose of remedying spoliation, it is clearly consistent with the evidentiary rationale supporting it because the remedies ameliorate the prejudicial effects resulting from the unavailability of evidence."); *Anderson v. Litzenberg*, 115 Md.App. 549, 694 A.2d 150, 156 (Md.1997) (stating adverse presumption may arise against spoliator even if there is no evidence of fraudulent intent). Premising an adverse inference spoliation instruction on

bad faith is consistent with the rationale underlying the instruction, *i.e.*, that the destruction reflects consciousness of a weak case, an admission by conduct. *See Langlet*, 283 N.W.2d at 333.[4]

In consideration of the fact that the blood sample was destroyed long before Vasquez's request for independent testing, the trial court cannot be faulted for finding an absence of bad faith in the instant case. At most the State was negligent. I would therefore not urge the court to give an adverse inference spoliation instruction.

In the exercise of its discretion, however, the trial court could, instruct the jury, when weighing the evidence in the case, to consider the State's destruction of the blood sample and the defendant's resultant inability to conduct his own independent test to assess the reliability of results produced by an agency of the State. In the trial court, the prosecutor acknowledged, as a result of the destruction of the blood sample, that defense counsel now had "an argument to present to the jury ... to perhaps put some doubt in someone's mind that maybe he should have been able to test it, maybe they should doubt it or whatever." This argument is always available to a criminal defendant; however, I believe the trial court has an important role in fashioning spoliation remedies calculated to encourage or coerce the State to preserve the evidence.

"[T]he unique problems seen in Texas during the last decade provide considerable impetus toward a conclusion that— fundamental fairness' demands preservation of potentially exculpatory evidence." *Pena v. State*, 226 S.W.3d 634, 650 (Tex. App.-Waco, 2007, pet. filed). Indeed, the majority recognizes the State's "important duty to preserve evidence in its posses-

4. Of course, limiting the adverse inference instruction to situations involving bad faith reduces its usefulness to a defendant in the same way as limiting it to situations involving favorable, material evidence.

sion." Majority op. at 751. By punishing the State's negligent conduct in failing to preserve the blood sample, a court might discourage or deter spoliation. *See Trevino*, 969 S.W.2d at 957 n. 1 (Baker, J., concurring).

On remand, the trial court has discretion to include a spoliation instruction. *See Wise*, 221 F.3d at 156 (stating district court has discretion to admit evidence of spoliation and to instruct jury on adverse inferences); *see also Trevino*, 969 S.W.2d at 959, 960 (Baker, J., concurring) (stating, in civil context, trial courts have broad discretion in choosing appropriate sanction and in instructing juries). Such an instruction might include, but should not necessarily be limited to the following: (1) the State had a duty to preserve the blood sample; (2) the State failed to preserve the blood sample, thereby precluding the defendant from obtaining independent tests, and (3) when determining reliability of the State's expert testimony, you may consider the fact that defendant was precluded from testing the blood sample.

Finally, I recognize that the issue of a spoliation instruction is not presented in this appeal. However, I have addressed this very important matter with the hope that our criminal jurisprudence will evolve and provide remedies sufficient to insure fundamental fairness, a proper goal of all courts.