Affirmed and Memorandum Opinion filed May 18, 2010



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00041-CR



 

John Alvin Willis, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the County Court
at Law No. 3

Jefferson County, Texas

Trial Court Cause No. 265871



 

MEMORANDUM OPINION

A jury convicted appellant, John Alvin
Willis, of prostitution, and the trial court assessed a $500 fine as punishment. 
In two issues, appellant contends the evidence is legally and factually
insufficient to support the conviction and the trial court erred by refusing to
submit appellant’s requested jury instruction regarding spoliation of evidence.
 Because all dispositive
issues are settled in law, we issue this memorandum opinion and affirm.  See
Tex. R. App. P. 47.4.

I.       Sufficiency
of the Evidence

In his first issue, appellant challenges
legal and factual sufficiency of the evidence to support his conviction.  

A.        Standard of Review

  In considering a legal-sufficiency challenge, we review all
evidence in the light most favorable to the verdict to determine whether any rational
jury could have found the essential elements of the offense beyond a reasonable
doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The
jury is the sole judge of the credibility of witnesses and may choose to
believe or disbelieve all or any part of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986).  We ensure
only that the jury reached a rational decision and do not reevaluate the weight
and credibility of the evidence.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).

In examining a factual-sufficiency
challenge, we review all evidence in a neutral light and set aside the verdict
only if (1) the evidence is so weak that the verdict seems either clearly wrong
or manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414–15 (Tex.
Crim. App. 2006).  Although we may substitute our judgment for the jury’s when
considering credibility and weight determinations, we may do so only to a very
limited degree and must still afford due deference to the jury’s determinations. 
See Marshall, 210 S.W.3d at 625.  

B.        Analysis

A person commits the offense of
prostitution “if he knowingly: (1) offers to engage, agrees to engage, or
engages in sexual conduct for a fee; or (2) solicits another in a public place to
engage with him in sexual conduct for hire.”  Tex. Penal Code Ann. § 43.02(a)
(Vernon Supp. 2009).  Appellant was charged with committing prostitution via
the second method defined in section 43.02(a).  Relative to this method, an
offense is established “whether the actor solicits a person to hire him or
offers to hire the person solicited.”  Id. § 43.02(b).  “Sexual conduct”
includes “deviate sexual intercourse, sexual contact, and sexual intercourse.” 
Tex. Penal Code Ann. § 43.01(4) (Vernon 2003).

In this case, the State alleged that
the sexual conduct solicited by appellant was “sexual intercourse and deviate
sexual intercourse.”  The application paragraph of the jury charge mirrored
this allegation with respect to the sexual conduct allegedly solicited.[1] 
Under the prostitution statute, “sexual intercourse” means “any penetration of
the female sex organ by the male sex organ.”  Id. § 43.01(5).  “Deviate
sexual intercourse” means “any contact between the genitals of one person and
the mouth or anus of another person.”  Id. § 43.01(1).

The State presented the testimony of Lakiesha
Thomas of the Port Arthur Police Department.  According to Officer Thomas, on
the evening of July 10, 2007, she was working undercover by posing as a
prostitute on a public street in an area of Port Arthur known for prostitution
activity.  Appellant approached in a vehicle, stopped where Officer Thomas was
standing, and initiated a conversation.  Appellant asked, “Can I give you a
ride?”  Officer Thomas replied, “It’s going to cost you.” Appellant asked, “How
much?”   Officer Thomas responded, “10 for head,” which meant oral sex, and “20
for sex,” which meant “straight sex.”  Appellant then said, “Okay.”  Officer
Thomas told appellant to drive around the block and she would meet him on the
opposite corner.  Appellant drove away and made the turn as instructed.  After
Officer Thomas signaled the surveillance unit involved in the operation, the
police stopped appellant’s vehicle.  Officer Thomas further testified she was
not mistaken regarding the substance of the above-cited conversation and
appellant’s statements were “plain and clear.” 

Appellant does not cite any
contrasting testimony but merely asserts that the evidence supporting his conviction
was “bordering on nonexistent.”  Nevertheless, he did testify at trial and
provided a different version of the incident.  Appellant claimed he approached
Officer Thomas because he saw her standing across from a vehicle and thought
she may have had car problems or some other distress.  Appellant slowed his
vehicle and asked if she needed a “boost” or “lift” or some question to that
effect.  When she quoted the prices for sexual acts, he became scared and sped
away.  Appellant denied asking “how much?,” agreeing to any sexual acts with
Officer Thomas, or attempting to engage her services as a prostitute.

This case essentially turned on the credibility
of witnesses.  The jury was free to believe Officer Thomas, and we find no
reason to intrude on its decision.  The jury could have rationally concluded that
appellant offered to hire Officer Thomas for the sexual acts she mentioned by initiating
the contact with her, inquiring about costs, responding “okay” when she quoted
the sexual acts and prices, and complying with her instruction to meet her on
the opposite corner.  Therefore, after reviewing all evidence in the light most favorable to the
verdict, we conclude a rational jury could have found beyond a reasonable doubt
that appellant knowingly solicited Officer Thomas in a public place to engage
with him in sexual intercourse and deviate sexual intercourse for hire. 
Further, viewing all
evidence in a neutral light, we conclude it is not so weak that the verdict
seems clearly wrong or manifestly unjust, and the verdict is not contrary to
the great weight and preponderance of the evidence.  Accordingly, we overrule
appellant’s first issue.

II.     Jury Instruction

In his second issue, appellant
contends the trial court erred by refusing to submit appellant’s requested jury
instruction regarding spoliation of evidence.  Appellant’s complaint concerns
audio and video recordings of the incident at issue.  It is apparently
undisputed that the interaction between appellant and Officer Thomas was
recorded by audio and video tape, but the police department was unable to
locate the recordings and thus the State did not produce them.[2]

The jury heard evidence presented by
the State regarding its efforts to produce the recordings.  Officer Thomas testified
it was not her role to “handle” that evidence; rather, Officer Primm or Officer
Arviso, who participated in the surveillance aspect of the operation, would
have logged them into evidence.  Officer Heather Primm, the “investigating
officer” for the operation, explained that undercover operations are typically
recorded via audio and video, and the officer who made the recordings must submit
them to the police department for conversion to C.D. or D.V.D., and then they
must be placed “into evidence.”  She further explained that officers have
defined roles in these operations, and she was not responsible for making or
submitting the recordings at issue.  She believed that Detective Arviso may have
been responsible for the recordings although she was not sure.  She and the
prosecuting attorney had discussed the recordings before trial, but the
department did not have them in evidence.

On cross-examination, Officer Primm
also testified that, three days after the incident, she prepared a report to
submit to the district attorney, and there were no recordings contained in
evidence to include with her report.  At some point before trial, she inquired with
the department’s evidence technician, who did not produce any recordings.  On
the day of trial, Officer Primm asked Officer Arviso and another officer about
the recordings, but Officer Arviso’s 2007 cases were lost in Hurricane Ike
several weeks before trial; thus, to the extent he retained “hard copies” for
2007 cases, he did not have them as of the trial date.   

For purposes of making a “bill”
outside the jury’s presence, appellant presented testimony from Chris Cadena, the
prosecuting attorney.  Cadena agreed that, after appellant filed a motion for
discovery, Cadena and appellant’s attorney discussed whether any recordings
existed.  Cadena testified he asked Officer Primm to inquire with appropriate
department employees about the existence of the recordings.  Cadena also inquired
with the only other officers who names appeared in the documents submitted to
the district attorney’s office.  Cadena had not spoken with Officer Arviso
because his name did not appear in the documents, and Cadena first learned of
his role during trial.  

Appellant then requested a jury
instruction regarding spoliation, a continuance so that the State could search
for the tapes and produce them, or a mistrial.  The trial court denied the
request for a continuance or mistrial but expressed it would permit an
appropriate jury instruction.  The trial court also found that the State had
exercised “due diligence” relative to discovery of the tapes but instructed Cadena
to contact the officers whose names were first mentioned during trial about
whether the recordings could be produced.  After complying, Cadena reported to
the trial court that Officer Arviso could not remember this particular case,
but, if he had made a recording, it would be “in evidence” at the police
department.  Officer Arviso also said that all his 2007 cases were lost due to
a computer glitch.  The trial court reiterated that it was satisfied the State
had used “due diligence” to locate the recordings, but it would allow appellant
an appropriate jury instruction.  

Appellant requested the trial court
to submit the following instruction in the jury charge:

It is a function, obligation and duty of the jury to
determine the facts of the case and guard against or take into account any
malfunction, erosion or mistake, including destruction of evidence, that might
prejudice those facts, however unintentional it might have been.

  

During the course of this trial, you have heard that
certain evidence was lost destroyed or disposed.  When evidence is destroyed,
we call it spoliation.  Spoliation of evidence is the unexplained and
deliberate destruction Of [sic] relevant evidence that gives rise to interference
[sic] that the thing which has been Would [sic] have been unfavorable to the position
of the party or agency Responsible [sic] for the spoliation.

 

If you find that a person or agency acting on behalf
of the State lost, destroyed Or [sic] disposed of the video or audio recording
or any other item, whether Deliberately [sic] or negligently, you are permitted
to infer that your consideration Of [sic] the evidence which was destroyed would
have been unfavorable to the State’s Position [sic] in this case.  You may
consider whether the individual or agency who destroyed the evidence knew the
evidence might be supporting [sic] of the opposing party. 

 

            The trial court refused
appellant’s request and instead submitted the following instruction:

During the course of the trial, you have heard that
certain evidence was lost or disposed of.  When evidence is lost or disposed
of, we call it spoliation.  Spoliation of evidence is the unexplained
destruction or loss of relevant evidence that gives rise to inference [sic]
that the thing which has been lost or disposed of would have been unfavorable
to the position of the party or agency responsible for the spoliation.

 

If you find that a person or agency acting on behalf
of the State lost or disposed of the video or audio recording, whether
deliberately or negligently, you are permitted to infer that your consideration
of the evidence which was lost or disposed of would have been or [sic]
unfavorable to the State’s position in this case.  You may consider whether the
individual or agency who lost or disposed of the evidence knew the evidence
might be supporting [sic] of the opposing party. 

 

When reviewing an allegation of jury-charge
error, we undertake a two-step review:  first, we must determine whether error
actually exists in the charge; and if so, we must determine whether sufficient
harm resulted from the error to require
reversal. Abdnor v. State, 871 S.W.2d 726, 731–32
(Tex. Crim. App. 1994).

In the “Argument” section of his
brief, appellant generally asserts the trial court’s charge was inadequate, appellant’s
proposed charge was “very thorough and legally sufficient to satisfy the case
law in this area,” and there was a “clear violation” of his rights.  However,
appellant cites no authority to support this contention and show he was
entitled to any jury instruction, much less his requested instruction.  See
Tex. R. App. P. 38.1(i) (providing that brief must contain a clear and concise
argument for the contentions made with appropriate citations to authorities and
the record).

In the “Summary of the Argument”
section of his brief, appellant cites one case to support his complaint. 
Appellant asserts that State v. Vasquez, 230 S.W.3d 744 (Tex.
App.—Houston [14th Dist.] 2007, no pet.) stands for the proposition that the
Fourteenth Amendment to the United States Constitution “is violated when the State
loses or destroys evidence which may be potentially useful.”  However, contrary
to appellant’s suggestion, the Vasquez court actually recited the distinction
drawn by the United States Supreme Court between pre-trial destruction of
“material, exculpatory evidence” and pre-trial destruction of “potentially
useful evidence.”  See id. at 747 (citing Arizona v. Youngblood, 488 U.S. 51,
58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988)).  We stated that a federal
due-process violation occurs whenever a state suppresses or fails to disclose
material, exculpatory evidence regardless of whether the state acted in bad
faith; id. (citing Illinois v. Fisher, 540 U.S. 544, 547–48,
124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004)); but a defendant seeking to prove a
federal due-process violation based on a state’s destruction of potentially
useful evidence must show the state acted in bad faith in destroying the
evidence.  Id. (citing Fisher, 540 U.S. at 547–48,
124 S.Ct. at 1202; Youngblood, 488 U.S. at 57–58,
109 S.Ct. at 337).

Appellant does not assert the recordings
were material and exculpatory but suggests only that they were potentially
useful.  However, appellant cites, and the record contains, no evidence that
the State acted in bad faith in failing to produce them.  Rather, as discussed
above, the record indicates the State attempted to produce any recordings, but
the police department could not find them.  The record further indicates that,
at most, any recordings were either never logged into evidence at the police
department or were lost after they were logged into evidence; and under either
scenario, any “hard copies” were subsequently lost because of a computer
problem or Hurricane Ike. 

Nevertheless, even if appellant were entitled
to a jury instruction regarding the recordings, he has not demonstrated he was
entitled to his requested instruction.  The difference essentially between the
instruction requested and the instruction given was that the trial court
eliminated the indication the State or police department affirmatively “destroyed”
the recordings and instead referenced evidence that was “lost” or “disposed of.” 
As the trial court correctly stated during the discussion regarding the jury
charge, there was no evidence the State or police department deliberately destroyed
any recordings.  Therefore, the trial court did not err by refusing to submit appellant’s
requested instruction.  See Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007) (requiring trial court to submit jury charge that, among other
matter, distinctly sets forth “law applicable to the case” (emphasis
added));  Carrillo v. State, 591 S.W.2d 876, 891
(Tex. Crim. App. 1979) (recognizing trial court is not
required to charge the jury on an issue not raised by the evidence), overruled
on other grounds by Reed v. State, 744 S.W.2d 112, 125
n.10 (Tex. Crim. App. 1988)).  Accordingly, we overrule appellant’s second issue.

We affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Justices Yates,
Seymore, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
We note that a person need not solicit both sexual intercourse and
deviate sexual intercourse to commit prostitution because each act alone constitutes
“sexual conduct.”  See Tex. Penal Code Ann. § 43.01(4).  Regardless,
we need not address whether the State was required to prove the offense as alleged
and set forth in the application paragraph of the jury charge because the
evidence is sufficient to support a finding that appellant solicited both
sexual intercourse and deviate sexual intercourse.





[2]
In various parts of the record, the audio and video components are referred to
as both a singular “recording” or “tape” and as multiple “recordings” or
“tapes.”  We will refer to them in the plural because our analysis applies
whether there was a singular recording or multiple recordings.