**Affirmed and Memorandum Opinion filed October 7, 2014**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00626-CR

**CHRISTOPHER CAMACHO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 06-DCR-045165A**

## M E M O R A N D U M   O P I N I O N

A jury convicted Christopher Camacho of capital murder of multiple persons,[1] and the trial court assessed his punishment at life imprisonment. Appellant contends that the trial court committed reversible error in denying appellant's (1) motion to suppress; and (2) proposed adverse-inference jury instruction. We affirm.

---

[1] *See* Tex. Penal Code Ann. § 19.03(a)(7) (Vernon Supp. 2014).

## BACKGROUND

Pedro Cortez discovered a white Cadillac sedan parked in an empty field in Fort Bend County on the morning of January 21, 2004. Cortez observed a woman later identified as Vivian Michelle Moreno in the front passenger's seat jumping up and down and gasping for air. Kneeling before her, also on the front passenger's side, was a man later identified as Michael Montalvo. Cortez believed Moreno to be gravely injured and Montalvo to be dead. He called emergency dispatch.

Soon after receiving Cortez's call, Fort Bend County Sheriff's Department deputies and medical personnel arrived on the scene. The emergency responders extracted Moreno from the vehicle and rushed her to a nearby hospital. Once at the hospital, Moreno was pronounced dead from a gunshot wound to the head. She also exhibited multiple stab wounds on the right side of her face.

Deputies at the crime scene determined that Montalvo died from a gunshot wound to the head. They photographed the car with Montalvo's body inside; they also photographed the ground immediately surrounding the car and collected evidence including a bullet found on the front driver's side floor.

The Cadillac was towed to the sheriff's department headquarters for additional processing after Montalvo's body was removed. Once at headquarters, additional photographs of the interior and exterior of the car were taken. The Fort Bend County Sheriff's Department took approximately 100 photographs of the car, 48 of which were admitted at trial. These photographs show, among other things, pooled blood on the back passenger's side floor; they also show blood splatter on the front seats and front center console. Additionally, the photographs show a large crack in the front driver's side window.

In addition to taking photographs, the sheriff's department also dusted the

2

car for finger prints, vacuumed the car to collect trace evidence, and examined the car for gunshot residue. The sheriff's department found gunshot residue on the interior car door surfaces and on the front headrests.

Investigators at the sheriff's department removed many of the interior structural items of the car to check for additional trace evidence. They removed the front driver's seat, which was connected to the center console; the front passenger's seat; the rear seat; the carpet; the vents located on the dash; and the steering wheel. After separating these items and performing evidentiary tests, the investigators placed these items in an enclosed evidence storage unit. The investigators covered these items with plastic. The rest of the Cadillac's body was stored separately in an outdoor sheriff's department storage lot, where it remained for the next four years.

Fort Bend County Sheriff's Department Detective Michael Kubricht received a call in 2008 from a fellow detective, Carlos Arredondo, notifying him that the sheriff's department vehicle storage lot was full. Detective Arredondo asked for permission to transfer the Cadillac to a third-party storage lot. Detective Kubricht agreed, and the car was transferred to the third-party lot in January 2008.

The sheriff's department has a policy of keeping all evidence in a homicide case until the case is completely closed. Detective Kubricht testified in the trial court that he believed the third-party storage lot used by the Fort Bend County Sheriff's Department held vehicles until needed. He previously had worked with another sheriff's department that used a third-party storage lot to hold vehicles indefinitely. Unbeknownst to Detective Kubricht, the third-party storage lot used by the Fort Bend County Sheriff's Department typically auctioned off cars after 90 days. Pursuant to this policy, the car Detectives Kubricht and Arredondo sent to the third-party storage lot was auctioned off in 2008. Its whereabouts remain

3

unknown.

Appellant was indicted for the capital murders of Moreno and Montalvo in 2010. Before trial, appellant moved to suppress all evidence from the Cadillac and testimony concerning such evidence because the Cadillac's body was unavailable for his independent inspection. The trial court held a hearing on the matter and denied appellant's motion.

Trial commenced in 2013. Before the jury was charged, appellant's counsel requested an adverse-inference jury instruction, which the trial court denied. The jury found appellant guilty of the capital murders of Moreno and Montalvo. This appeal followed.

## ANALYSIS

Appellant's two appellate issues are intertwined. Appellant contends that his state constitutional rights were violated by the loss of the Cadillac's body because further testing of it could have provided exculpatory evidence. Appellant argues the trial court should have excluded related evidence or given an adverse-inference jury instruction.[2]

---

[2] In issue one, appellant additionally asserts that the trial court erred in denying his motion to dismiss. Nevertheless, appellant does not argue or ask for dismissal in his brief to this court, nor does he cite relevant legal authority or the record to support dismissal. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i). An unargued point is considered waived. *Parker Cnty. Appraisal Dist. v. Francis*, 436 S.W.3d 845, 848 n.2 (Tex. App.—Fort Worth 2014, no. pet.). Because appellant has not argued or asked for dismissal, and has not cited relevant authority or the record, we hold appellant has waived his challenge to the trial court's denial of his motion to dismiss. *See Robinson v. Tex. Constr. Servs. Corp.*, No. 14-12-00723-CV, 2014 WL 1673821, at *5 (Tex. App.—Houston [14th Dist.] Apr. 24, 2014, no pet.) (mem. op.) (finding an appellant waived his challenge to the legal and factual sufficiency supporting the trial court's finding by not providing any argument, analysis, or citations to the record or legal authority); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (overruling an appellant's issue as insufficiently argued where the appellant asserted only that there are additional grounds for reversal and that

4

## I. Motion to Suppress

Appellant contends in his first issue that the trial court erred in denying his motion to suppress evidence relating to the preserved portions of the Cadillac's interior.

We review a trial court's ruling on a motion to suppress for abuse of discretion and will overturn the trial court's decision only if it lies outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review; we give almost complete deference to the trial court's determinations of credibility and historical facts, but review *de novo* the trial court's application of the law to the facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). Where, as here, the trial court does not make explicit findings of fact, we presume the trial court made implicit findings supported in the record that buttress its conclusion. *Carmouche v. State,* 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

The Texas Constitution provides due process protection through the Due Course of Law Clause, which states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. The Due Course of Law Clause is comparable to the Due Process Clause of the United States Constitution, which provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. While the two clauses are textually similar, appellant insists that the Due Course of Law Clause provides a

reversal would avoid injustice).

5

broader level of protection than the federal Due Process Clause.

Appellant relies exclusively on *Pena v. State*, 226 S.W.3d 634, 653 (Tex. App.—Waco 2007), *rev'd*, 285 S.W.3d 459 (Tex. Crim. App. 2009). *Pena* concluded that the Due Course of Law Clause standard provides greater protection than the Due Process Clause to defendants faced with the State's loss or destruction of potentially exculpatory evidence. *Id.* at 651-56. Key to this standard is a balancing test. *Id.* at 651. *Pena* focused on (1) whether the evidence would have been subject to discovery or disclosure; (2) whether the State had a duty to preserve the evidence; and (3) if there was a duty, whether the duty was breached and what consequences should flow. *Id.* In turn, the third element focused on (1) the degree of negligence or bad faith involved; (2) the importance of the lost evidence; and (3) the sufficiency of the other evidence adduced at trial to sustain the conviction. *Id.* Applying this test, *Pena* held that a due course of law violation existed based on the State's destruction of potentially exculpatory evidence. *Id.* at 653-56. The Court of Criminal Appeals reversed, holding that the defendant failed to preserve for review his due course of law claim. *Pena*, 285 S.W.3d at 464.

Appellant misplaces his reliance on *Pena* because binding precedent in this court rejects the *Pena* standard. *See State v. Vasquez*, 230 S.W.3d 744, 748-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We stated, "[T]he Due Course of Law Clause provides the same protection as the Due Process Clause regarding the State's destruction of potentially useful evidence in a criminal prosecution." *Id.* We reached this conclusion by analyzing the nearly identical language of the state and federal clauses. *Id.* at 749-50; *see also Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we

6

regard these terms as without meaningful distinction."). *Vasquez* has not been overruled by a higher court or this court sitting *en banc*, nor has there been an intervening and material change in statutory law. Accordingly, *Vasquez* controls here. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court.").[3]

Under *Vasquez*, the State must preserve material, exculpatory evidence. *See Vasquez*, 230 S.W.3d at 747; *see also California v. Trombetta*, 467 U.S. 479, 488 (1984). Appellant does not contend that the Cadillac's body constitutes material, exculpatory evidence.

Where lost or destroyed evidence is merely "potentially useful," due process is not violated "unless a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988); *see also Illinois v. Fisher,* 540 U.S. 544, 547-48 (2004) (reaffirming the *Youngblood* standard). "Potentially useful" evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57-58. Appellant's expert testified that the Cadillac's disappearance prevented him from determining whether evidence

---

[3] No other Texas appellate court has adopted the due course of law standard discussed in *Pena*; at least six courts of appeals, including this one, have applied the federal due process standard for determining whether a defendant's state constitutional rights have been violated by the State's failure to preserve potentially exculpatory evidence. *See Jones v. State*, 437 S.W.3d 536, 540 (Tex. App.—Texarkana 2014, no. pet.); *Higginbotham v. State*, 416 S.W.3d 921, 926 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Vasquez*, 230 S.W.3d at 751; *McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); *Salazar v. State,* 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.); *see also Alvarado v. State*, No. 07–06–0086–CR, 2006 WL 2860973, at *3 (Tex. App.—Amarillo Oct. 9, 2006, no pet.) (mem. op., not designated for publication).

contained in the car's shell was exculpatory or inculpatory. Therefore, the Cadillac's body is at most potentially useful evidence.

The trial court did not make findings of fact; it orally rejected appellant's motion to suppress after a hearing on the matter. Where the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327-28. In other words, we assume the trial court made implicit findings of fact supported in the record that buttress its conclusions. *Id.* Viewing the record in this light, we conclude that the evidence supports the trial court's implicit finding that the State did not lose or destroy the body of the car in bad faith.

Fort Bend County Sheriff's Department detectives testified that they mistakenly transferred the vehicle at issue in this case to a third-party storage lot, which did not have a procedure for preserving vehicles indefinitely. Detective Kubricht testified that he approved the transfer while under the mistaken belief that the vehicle would be preserved. Detective Arredondo testified that he had no knowledge of this case at the time he transferred the vehicle, nor did he know of the importance of the vehicle to the case. Both individuals testified that they held no animus towards appellant when they transferred the vehicle. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the record adequately supports the trial court's implied finding that the State did not act in bad faith in failing to preserve potentially useful evidence.

Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress. *See Vasquez*, 230 S.W.3d at 747-48 (affirming denial of motion to suppress blood-test results performed on an accused intoxicant's blood sample where the trial court found that the blood sample was not destroyed in bad faith).

## II.    Jury Instruction

Appellant argues in his second issue that the trial court erred by failing to include an adverse-inference jury instruction in the charge.

Article 36.14 of the Texas Code of Criminal Procedure requires the trial court to give the jury a written charge, setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14 (Vernon 2007). We review a claim of jury charge error using the two-step procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). We first determine whether there is error in the charge. *Id.* Then, if error is found, we analyze that error for harm. *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013).

Appellant requested an adverse-inference jury instruction, which the trial court denied. The jury charge did not include any instruction on presumptions the jury may or must make regarding the State's failure to produce the Cadillac's body for appellant's independent inspection. Citing *Pena*, 226 S.W.3d at 655, appellant contends that an adverse-inference instruction was mandated to cure a due course of law violation.

Appellant has not established a due course of law violation; thus, he has not established entitlement to an adverse-inference jury instruction. Moreover, *Pena* does not control. *See Vasquez*, 230 S.W.3d at 748-51. Under binding precedent, the trial court did not err in refusing appellant's adverse-inference instruction. A criminal defendant requesting an adverse-inference instruction allowing the jury to infer lost or destroyed evidence would have produced a result favorable to the defendant must show that the evidence was favorable and material. *White v. State,* 125 S.W.3d 41, 43-44 (Tex. App.—Houston [14th Dist.] 2003), pet. ref'd). Appellant has not shown that the lost Cadillac body was favorable or material to

9

his defense; he has shown, at most, that the evidence contained in the car's shell was potentially useful. Accordingly, the trial court did not err in refusing an adverse-inference instruction. *See id.* at 44 (trial court did not err in refusing an adverse-inference instruction where the defendant could show only that the unpreserved evidence might have been favorable to his defense).

We overrule appellant's second issue. *See Celis*, 416 S.W.3d at 42 (when there is no charge error, the court need not conduct a harm analysis).

## CONCLUSION

Having overruled appellant's two issues, we affirm the trial court's judgment.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Busby, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).