NO. 12-06-00422-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


KENDALL LAMAR PURVIS,
§
 APPEAL FROM THE 349TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HOUSTON COUNTY, TEXAS

 

MEMORANDUM OPINION


 A jury found Appellant Kendall Lamar Purvis guilty of possession of cocaine with intent to
deliver. The trial judge assessed his punishment at imprisonment for fifteen years. Appellant
presents four issues on appeal contending that (1) the evidence is legally insufficient, (2) the
evidence is factually insufficient, (3) the trial court erred in overruling his motion to suppress, and
(4) the State's negligent loss of a videotape taken at the scene of the search deprived him of due
process of law. We affirm.


Background


 While on patrol, Crockett Police Officers Ramos and Massingill stopped at a house in an area
known for drug trafficking. Four men were sitting in the fenced-in front yard of the residence. 
Appellant was sitting by himself on one of the benches. From a distance of approximately thirty
yards, Officer Ramos saw Appellant bend down and put something under the bench where he sat. 
Ramos exclaimed, "He's stuffing something under the bench." Both officers got out of the patrol
car. Ramos entered the yard while Massingill stood in the road watching. As Ramos approached,
Appellant stood up and engaged Ramos in a conversation. Ramos noticed what appeared to be a
marijuana cigar or "blunt" between the bench where Appellant had been sitting and a bench where
two other men were sitting. All present denied any connection with the cigar. Appellant told Ramos
that the property owner was inside. Appellant accompanied Ramos as he went to the front door to
contact the owner. No one answered and Ramos and Appellant started toward the back door. But
when Ramos turned around to talk to Appellant, he had already left the property. According to
Massingill, after Appellant got a few yards from the house on Cottonwood Street, he started running. 
At this point, Appellant had not been detained or told he was detained.

 Ramos then went to the bench where Appellant had been sitting. He retrieved a clear plastic
baggie containing twenty-one rocks of crack cocaine from beneath the bench directly under where
Appellant had been sitting and from the same place where Ramos had seen Appellant putting
something as the officers drove up. Thaddeus Haynes and Tyson Griffin, two of the four men
present when the police drove up, testified that they had not seen Appellant put anything under the
bench. Officer Massingill had kept the area under close observation from the time he and Ramos
had arrived. No one else had placed anything under that bench since their arrival. The officers then
went in pursuit of Appellant in their patrol car. They went to the Prince Hall Apartments where they
knew his girlfriend lived. They saw Appellant get out of a car and start running through the
apartments. The officers went to the apartment of Appellant's girlfriend. After they spoke with his
girlfriend, Appellant came out of the apartment breathing heavily, and they arrested him.


Sufficiency of the Evidence


 In his first two issues, Appellant contends the evidence is both legally and factually sufficient
to support his conviction.

Standard of Review

 The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in
the light most favorable to the jury's verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317-18, 99
S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); see also Sanders v. State, 119 S.W.3d 818, 820 (Tex.
Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

Applicable Law

 The indictment alleges that Appellant possessed with intent to deliver more than four but less
than two hundred grams of cocaine. See Tex. Health & Safety Code Ann. § 481.112(d) (Vernon
2003).

 To prove unlawful possession of a controlled substance, the State must establish that (1) the
accused exercised control, management, or care over the substance, and (2) the accused knew the
matter possessed was contraband. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App.
2005). "[I]t must establish, to the requisite level of confidence, that the accused's connection with
the drug was more than just fortuitous." Id. at 406. "[W]hen the accused is not in exclusive
possession of the place where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband." Id. The court of criminal
appeals has recently recognized that "affirmative" adds nothing to "link" and resolved to use only
"link" to describe circumstances connecting the accused to the contraband. Evans v. State, 202
S.W.3d 158, 161-62 & n.9 (Tex. Crim. App. 2006). Links that may circumstantially establish the
sufficiency of the evidence to prove a knowing "possession" include the following:


 (1) the defendant's presence when a search is conducted;


 (2) whether the contraband was in plain view;


 (3) the defendant's proximity to and the accessibility of the narcotic;


 (4) whether the defendant was under the influence of narcotics when arrested;


 (5) whether the defendant possessed other contraband or narcotics when arrested;


 (6) whether the defendant made incriminating statements when arrested;


 (7) whether the defendant attempted to flee;


 (8) whether the defendant made furtive gestures;


 (9) whether there was an odor of contraband;


 (10) whether other contraband or drug paraphernalia were present;


 (11) whether the defendant owned or had the right to possess the place where the 
 drugs were found;


 (12) whether the place where the drugs were found was enclosed;


 (13) whether the defendant was found with a large amount of cash; and

 

 (14) whether the conduct of the defendant indicated a consciousness of guilt.



See Evans, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather
the logical force of all of the evidence, direct and circumstantial." Id.

 The State must also prove that Purvis possessed the crack cocaine with intent to deliver. 
Circumstances considered by the courts in determining "intent to deliver" include (1) the nature of
the location where the defendant was arrested, (2) the quantity of the drugs the defendant possessed,
(3) the manner of packaging the drugs, (4) the presence or absence of drug paraphernalia (for use or
sale), (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6)
the defendant's status as a drug user. Garrett v. State, 161 S.W.3d 664, 671 (Tex. App.-Fort Worth
2005, pet. ref'd). In Mack v. State, 859 S.W.2d 526 (Tex. App.-Houston [1st Dist.] 1993, no writ),
the court considered the appellant's lack of paraphernalia for smoking the crack cocaine as evidence
of his intent to deliver. Id. at 529.

Discussion

 When the officers came around the corner in their patrol car, Ramos saw Appellant quickly
put something under the bench, which he alone occupied. The baggie containing twenty-one rocks
of crack cocaine was found in the same spot where Ramos had seen Appellant apparently hiding
something. Officer Massingill testified that he had watched the area continuously except for a few
moments when he saw Appellant running away. He told the jury that it was very unlikely that
anyone else could have placed the drugs under the bench between the time the officers arrived and
Officer Ramos's retrieval of the drugs from under the bench. 

 The location on Cottonwood Street was a popular gathering place notorious for drug use and
trafficking. A marijuana blunt lay in plain sight. Appellant's conduct in immediately approaching
Officer Ramos to engage him in conversation appears to have been an attempt to divert the officer's
attention from the hidden crack cocaine, and is conduct that the jury might logically interpret as
consciousness of guilt. The jury was entitled to draw the same conclusion from Appellant's manner
of leaving the location, first stealing away, then breaking into a run down the street. Officer
Massingill testified that it was very unlikely that anyone else would have stashed twenty-one rocks
worth $400 or $500 in such a location. We conclude the circumstantial evidence connecting
Appellant to the crack cocaine is sufficient evidence, both legally and factually, of Appellant's care,
custody, or control of the drugs.

 Appellant's intent to deliver may be inferred from the quantity of the drugs possessed. 
Officer Ramos testified that a typical user possessed only one to three rocks of crack cocaine at any
one time. In Ramos's experience, the possession of twenty-one rocks indicated that the person
possessing the cocaine intended to sell or deliver it. The front yard where Ramos found the drug was
known as a place to obtain narcotics. The officers had made drug arrests there in the past. Measured
against the appropriate standards, the evidence is legally and factually sufficient to support the jury's
conclusion that Appellant possessed the crack cocaine with intent to deliver it. Appellant's first two
issues are overruled.


Motion to Suppress


 In his third issue, Appellant maintains that the cocaine he allegedly possessed was seized
illegally as a result of a warrantless search of the front yard of the residence on Cottonwood Street. 
Therefore, Appellant argues the trial court erred in overruling his motion to suppress.

Standard of Review

 In reviewing a trial court's decision on a motion to suppress evidence, the court of appeals
gives almost total deference to the trial court's determination of historical facts. Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact
that do not turn on an evaluation of credibility and demeanor. Laney v. State, 117 S.W.3d 854, 857
(Tex. Crim. App. 2003). We sustain the trial court's ruling if it is reasonably supported by the record
and correct under any theory of law applicable to the case. Id. 


Applicable Law

 In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that
he or she personally has an expectation of privacy in the place searched and that the expectation is
reasonable. Rakas v. Illinois, 439 U.S. 128, 139-40, 99 S. Ct. 421, 428, 58 L. Ed. 2d 387 (1978);
Granados v. State, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002). The defendant has the burden
of presenting facts establishing a legitimate expectation of privacy, because he or she has greater
access to the relevant evidence. Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Criteria relevant in determining whether the accused's subjective expectation of privacy is
reasonable so as to support standing to challenge the search include the following: (1) whether the
alleged aggrieved person has a property or possessory interest in the thing seized or the place
searched; (2) whether he was legitimately on the premises; (3) whether he had complete dominion
or control and the right to exclude others; (4) whether, prior to the search, he took normal
precautions customarily taken by those seeking privacy; (5) whether he put the property to some
private use; and (6) whether his claim is consistent with historical notions of privacy. Davis v. State,
119 S.W.3d 359, 366-67 (Tex. App.-Waco 2003, pet. ref'd). 

 "Curtilage" is the land immediately surrounding and associated with the home and warrants
the same protections that attach to the home. Bower v. State, 769 S.W.2d 887, 896 (Tex. Crim. App.
1989), cert. denied, 492 U.S. 927, 109 S. Ct. 3266, 106 L. Ed. 2d 611 (1989), overruled on other
grounds, Heitman v. State, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991); accord Gonzalez v. State,
588 S.W.2d 355, 360 (Tex. Crim. App. 1979). Whether a particular area is included with the
curtilage for purposes of the Fourth Amendment is determined by whether the defendant had a
reasonable expectation of privacy in the area. Bower, 769 S.W.2d at 896. Factors to be considered
include the proximity of the area to the house, the area's use, and the steps taken to protect the area
from observation by passersby. United States v. Dunn, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139,
94 L. Ed. 326 (1987). A public place is not within the curtilage of a home. Evans v. State, 995
S.W.2d 284, 285-86 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd). A "public place" is defined
as "any place to which the public or a substantial group of the public has access and includes, but
is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses,
office buildings, transport facilities, and shops." Tex. Penal Code Ann. § 1.07(a)(40) (Vernon
Supp. 2007).

Discussion

 Appellant had no property interest in the front yard of the home at 813 Cottonwood where
Officer Ramos found the twenty-one rocks of crack cocaine. Jesse Reece testified that he owned and
lived in the house at that address. Reece testified that people had used his front yard as a gathering
place since 1990. Twenty-five to fifty people came on a regular basis to play dominos. He testified
that Officer Ramos had talked to him ten or fifteen times about people selling dope in his yard. 
Although the yard was surrounded by a rudimentary fence, access to the yard was not restricted but
open to the general public. There were benches and tables for dominos. Appellant exercised no
dominion or control over the premises and had no right to exclude others from it. The front yard at
813 Cottonwood was a "public place." No one could have had a reasonable expectation of privacy
at that location, certainly not Appellant. Appellant had no standing to challenge the search of the
front yard at 813 Cottonwood Street. See Granados, 85 S.W.3d at 222-23. Appellant's third issue
is overruled.


Videotape of Search Lost or Destroyed


Through the State's Negligence


 In his fourth issue, Appellant complains that the State's failure to preserve the videotape of
the search and seizure deprived him of potentially exculpatory evidence necessary for his defense
in violation of the due course of law provisions of Article I, Section 19 of the Texas Constitution.

 Officer Ramos testified that a patrol car videotape had been made that would have shown
Cottonwood Street with part of the intersection right at Cottonwood, "not a very wide span." Ramos
explained the patrol car camera only filmed directly in front of the patrol car and that it would not
have captured anything that occurred in the front yard of the Cottonwood address.

 After Ramos's testimony, Appellant requested that the court order the State to produce the
videotape. Ramos told the court that he had tried to locate the videotape, but he had been unable to
do so. Ramos explained that it might have been one of the items misplaced when the special drug
task force was disbanded. The trial court instructed the State to attempt to locate the videotape
during a recess. The prosecutor reported to the court that the State's efforts to find the videotape
were unsuccessful. The trial court overruled Appellant's oral motion for continuance based on
Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 3d 215 (1963). Appellant maintains the
lost videotape was "potentially useful," but he does not contend its loss was the product of the
State's bad faith. Appellant made no further objection nor did he ask for a jury instruction.

Applicable Law

 "A criminal defendant has a right to inspect evidence indispensable to the State's case
because that evidence is necessarily material to the defense of the accused." McBride v. State, 838
S.W.2d 248, 251 (Tex. Crim. App. 1992). When the State loses or destroys evidence that is only
"potentially useful," the defendant must show that the police acted in bad faith to establish a due
process violation under the Fourteenth Amendment. See Arizona v. Youngblood, 488 U.S. 51, 58,
109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988). Texas constitutional provisions analogous to federal
constitutional provisions are generally interpreted to have the same meaning. See, e.g., Cobb v.
State, 85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002); but see Heitman, 815 S.W.2d at 682-83
(recognizing that states are free to reject federal holdings as long as state action does not fall below
the minimum standards provided by federal constitutional protections and also may impose greater
restrictions than those the Supreme Court holds to be necessary under federal constitutional
standards). The Texas Constitution should be interpreted as providing broader protection than its
federal counterpart only if such an interpretation has "firm support in state history or policy." Cobb
v. State, 85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002). With one exception, Texas courts have
applied the Youngblood bad faith requirement to claims arising under the Texas Constitution's due
course of law provision. See Pena v. State, 226 S.W.3d 634, 645-46 (Tex. App.-Waco 2007, writ
granted) and the cases listed therein.

 For a complaint to be presented on appeal, a timely request, objection, or motion must have
been made to the trial court, which "states the grounds for the ruling that the complaining party
sought from the trial court with sufficient specificity to make the trial court aware of the complaint,
unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A).
Ordinarily an objection at trial based solely on federal constitutional grounds will not preserve a state
constitutional claim for review. Heidelberg v. State, 144 S.W.3d 535, 542 (Tex. Crim. App. 2004). 
The legal basis of a complaint on appeal cannot vary from that raised at trial. Id. at 537.


Discussion

 Appellant moved for a recess based on "Brady" to allow more time for the State to locate the
missing patrol car videotape. Appellant did not invoke his state constitutional right to due course
of law. He relied solely on his federal constitutional due process right under Brady v. Maryland,
373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Appellant's reliance solely on federal
constitutional grounds did not preserve for review his complaint that he was denied due course of
law under the state constitution. 

 Moreover, the lost patrol car videotape was not shown to be exculpatory but only potentially
exculpatory. It was not "indispensable" to the State's case, nor necessarily material to Appellant's
defense. With one exception, Texas courts have followed the Youngblood rule holding that the
failure to preserve potentially useful evidence is not a denial of due process of law unless the
defendant can show bad faith on the part of the State. See, e.g., McGee v. State, 210 S.W.3d 702,
704 (Tex. App.-Eastland 2006, no pet.); Jackson v. State, 50 S.W.3d 579, 588-89 (Tex. App.-Fort
Worth 2001, pet. ref'd). Appellant concedes the videotape's loss was the result of the State's
negligence, not its bad faith. Without a showing by Appellant of the State's bad faith, Appellant
cannot establish a denial of his right to due course of law. Appellant's fourth issue is overruled.


Disposition


 The judgment of the trial court is affirmed.





 BILL BASS 

 Justice



Opinion delivered May 30, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice,

Twelfth Court of Appeals, Tyler, sitting by assignment.



(DO NOT PUBLISH)