**Willie Marion McGEE, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 11–05–00038–CR.

Court of Appeals of Texas, Eastland.

Oct. 5, 2006.

B.J. Brown, Odessa, for appellant.

R.N. (Bobby) Bland, Dist. Atty., J. Roderick Price, Asst. Dist. Atty, Ector County Dist. Atty's Office, Odessa, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and HILL, J.[1]

## OPINION

JOHN G. HILL, Justice (Assigned).

Willie Marion McGee appeals his conviction by a jury of the offense of robbery.

---

1. John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth    sitting by assignment.

The jury, following McGee's plea of true to an enhancement paragraph, assessed his punishment at eleven years in the Texas Department of Criminal Justice, Institutional Division. He contends in four points of error that he was denied due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and under Article I, section 19 of the Texas Constitution when the State lost or destroyed critical evidence and failed to notify the defense that it lost or destroyed critical evidence. We affirm.

Melissa Butts, a patrol officer with the Odessa Police Department, testified that she encountered the complainant in the parking lot of a Wal–Mart store. According to Officer Butts, the complainant related that someone came up and grabbed her purse, pushed her up against her car, and injured her left shoulder. Two witnesses identified McGee as an individual whom, on the occasion in question, they saw running through the parking lot carrying a purse.

Rick Henegar, a sergeant with the Odessa Police Department, testified that he was a detective at the time of this offense. He indicated that he went to Wal–Mart and reviewed a security tape from the evening in question. He stated that the tape did not show any faces and that it showed nothing other than a person running to a car and then leaving. He insisted that he did not know what happened to the tape. When he was asked whether the defense could perhaps have had the tape enhanced, he replied, "I don't know. I guess you could have." Later, he indicated that the tape was very poor quality, so he did not know if it could have been enhanced. Sergeant Henegar acknowledged that he

knew about enhancement equipment and that a tape could be put on some other format and things brought out. He further acknowledged that, if the tape could have been enhanced, it could show whether McGee did or did not commit the offense. He insisted that he was not an expert in enhancing poor-quality tapes. He stated that in his opinion he would not think that the particular security tape in question could be made any clearer. McGee presented a motion for mistrial based on the State's failure to preserve the tape and its failure to disclose the existence of the tape.

■ McGee contends in point one that he was denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution due to lost or destroyed evidence. The tape in question was not shown to be exculpatory but, rather, evidence that was potentially exculpatory. Failure to preserve potentially useful evidence is not a denial of due process of law unless a criminal defendant can show bad faith on the part of the police. *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Neither in his motion for mistrial, nor the discussion in connection with the motion, does McGee suggest that the State acted in bad faith in failing to preserve the tape. In support of his contention on appeal that Sergeant Henegar acted in bad faith, McGee notes that Sergeant Henegar did not preserve the tape as evidence; that he knew about enhancement but did not request it; that he knew the tape, even without a clear view of faces, could be used to establish the ability of witnesses to identify a suspect so that its value for impeaching identification witnesses was clear; that he destroyed his field notes and failed to mention the existence of the tape either in his reports or to the district attorney; and that no police

procedures were cited in the destruction or disappearance of the tape.

The burden was on McGee to show that Sergeant Henegar acted in bad faith. He presented no evidence that Sergeant Henegar was not following police procedures in failing to preserve the tape, including any failure to maintain his field notes or to mention it to the district attorney, in view of Sergeant Henegar's determination that the tape was not useful as evidence. While Sergeant Henegar was aware of enhancement and what it might do in some cases, he expressed his opinion that it would not make the tape in question any clearer. McGee suggests that the tape would have been helpful in showing where the various witnesses were, the height of the complainant's assailant by comparison to the witnesses, and the length of time that the witnesses had to observe the assailant. Although Sergeant Henegar at trial acknowledged that the location of the witnesses, the distances they ran, and time "they disappeared off the camera" could be determined by the tape even though the faces were unclear, we hold that this evidence showed negligence, if any, on the part of the officer in failing to preserve the tape, not bad faith. Because we hold that McGee failed to show bad faith on the part of Sergeant Henegar, we overrule point one.

■ McGee urges in his second point of error that he was denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution when the State failed to notify him of the loss or destruction of critical evidence. In such a situation, the three-part test used to determine whether a prosecutor's actions have violated due process is whether the prosecutor (1) failed to disclose evidence (2) favorable to the accused and whether (3) the evidence is material, meaning there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Little v. State*, 991 S.W.2d 864, 866 (Tex.Crim.App.1999). Inasmuch as there was no showing that the tape in question was favorable to the accused or that there was a reasonable probability that the result could have been different had the evidence been disclosed to the defense, we overrule point two.

■ McGee asserts in points three and four that he was denied due course of law under Article I, section 19 of the Texas Constitution when the State lost or destroyed critical evidence. Relying on the Tennessee case of *State v. Ferguson*, 2 S.W.3d 912 (Tenn.1999), he suggests that, rather than requiring that he show bad faith on the part of the State in destroying potentially useful evidence, we should employ a balancing test by considering the degree of negligence involved, the significance of the destroyed evidence considered in light of the probative value and reliability of secondary evidence that remains available, and the sufficiency of the other evidence used at trial to support the conviction. 2 S.W.3d at 917. He states that, if we conclude that without the missing evidence the trial was fundamentally unfair, we are to fashion whatever remedy we deem appropriate, up to and including dismissal. *See id.*

■ We have a duty to interpret the Texas Constitution independently of the interpretations of federal courts. *Hulit v. State*, 982 S.W.2d 431, 436–37 (Tex.Crim. App.1998). The protections afforded by the state constitution may be lesser, greater, or the same as those of the federal constitution. *Id.* at 437. However, we find that the standards required to show a violation of federal due process rights caused by the loss or destruction of evidence and by the failure to give the defense notice of such loss or destruction are sound and well reasoned in the cases cited.

Accordingly, we hold it is appropriate to apply them to the due course of law provision of the Texas Constitution in connection with those same issues. *See Moore v. State*, 943 S.W.2d 127, 129–30 (Tex.App.-Austin 1997, pet. ref'd) (applying federal due process standards in connection with preindictment delay to the due course of law provision of the Texas Constitution).

McGee places primary reliance on the case of *Pena v. State*, 166 S.W.3d 274 (Tex.App.-Waco 2005), *vacated*, 191 S.W.3d 133 (Tex.Crim.App.2006). In *Pena*, the Tenth Court of Appeals rejected the *Youngblood* test and adopted the balancing test now proposed by McGee. *Id.* at 282. After McGee's brief was filed, the Texas Court of Criminal Appeals reversed because the Tenth Court had taken up the issue on its own, without affording the parties the opportunity to file supplemental briefs. *Pena v. State*, 191 S.W.3d 133 (Tex.Crim.App.2006).

McGee also relies on a number of cases, including *Ex parte Richardson*, 70 S.W.3d 865 (Tex.Crim.App.2002); *Ex parte Mowbray*, 943 S.W.2d 461 (Tex.Crim.App.1996); and *Ex parte Mitchell*, 853 S.W.2d 1 (Tex. Crim.App.1993). We find these cases to be distinguishable because in each case it was found that the evidence in question was favorable to the defendant and that its unavailability created a probability sufficient to undermine confidence in the result of the trial. *Richardson*, 70 S.W.3d at 872–73; *Mowbray*, 943 S.W.2d at 466; *Mitchell*, 853 S.W.2d 1, 4, 6. We have held that the lost tape was at best only potentially favorable to the defendant and that it did not create a probability sufficient to undermine confidence in the result of the trial. We overrule points three and four.

The judgment is affirmed.