# NO. 12-06-00422-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KENDALL LAMAR PURVIS,*<br>*APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury found Appellant Kendall Lamar Purvis guilty of possession of cocaine with intent to deliver. The trial judge assessed his punishment at imprisonment for fifteen years. Appellant presents four issues on appeal contending that (1) the evidence is legally insufficient, (2) the evidence is factually insufficient, (3) the trial court erred in overruling his motion to suppress, and (4) the State's negligent loss of a videotape taken at the scene of the search deprived him of due process of law. We affirm.

## BACKGROUND

While on patrol, Crockett Police Officers Ramos and Massingill stopped at a house in an area known for drug trafficking. Four men were sitting in the fenced-in front yard of the residence. Appellant was sitting by himself on one of the benches. From a distance of approximately thirty yards, Officer Ramos saw Appellant bend down and put something under the bench where he sat. Ramos exclaimed, "He's stuffing something under the bench." Both officers got out of the patrol car. Ramos entered the yard while Massingill stood in the road watching. As Ramos approached, Appellant stood up and engaged Ramos in a conversation. Ramos noticed what appeared to be a

marijuana cigar or "blunt" between the bench where Appellant had been sitting and a bench where two other men were sitting. All present denied any connection with the cigar. Appellant told Ramos that the property owner was inside. Appellant accompanied Ramos as he went to the front door to contact the owner. No one answered and Ramos and Appellant started toward the back door. But when Ramos turned around to talk to Appellant, he had already left the property. According to Massingill, after Appellant got a few yards from the house on Cottonwood Street, he started running. At this point, Appellant had not been detained or told he was detained.

Ramos then went to the bench where Appellant had been sitting. He retrieved a clear plastic baggie containing twenty-one rocks of crack cocaine from beneath the bench directly under where Appellant had been sitting and from the same place where Ramos had seen Appellant putting something as the officers drove up. Thaddeus Haynes and Tyson Griffin, two of the four men present when the police drove up, testified that they had not seen Appellant put anything under the bench. Officer Massingill had kept the area under close observation from the time he and Ramos had arrived. No one else had placed anything under that bench since their arrival. The officers then went in pursuit of Appellant in their patrol car. They went to the Prince Hall Apartments where they knew his girlfriend lived. They saw Appellant get out of a car and start running through the apartments. The officers went to the apartment of Appellant's girlfriend. After they spoke with his girlfriend, Appellant came out of the apartment breathing heavily, and they arrested him.

### SUFFICIENCY OF THE EVIDENCE

In his first two issues, Appellant contends the evidence is both legally and factually sufficient to support his conviction.

### Standard of Review

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *see also Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak

as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

**Applicable Law**

The indictment alleges that Appellant possessed with intent to deliver more than four but less than two hundred grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2003).

To prove unlawful possession of a controlled substance, the State must establish that (1) the accused exercised control, management, or care over the substance, and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). "[I]t must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* at 406. "[W]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* The court of criminal appeals has recently recognized that "affirmative" adds nothing to "link" and resolved to use only "link" to describe circumstances connecting the accused to the contraband. *Evans v. State*, 202 S.W.3d 158, 161-62 & n.9 (Tex. Crim. App. 2006). Links that may circumstantially establish the sufficiency of the evidence to prove a knowing "possession" include the following:

(1) the defendant's presence when a search is conducted;

(2) whether the contraband was in plain view;

(3) the defendant's proximity to and the accessibility of the narcotic;

(4) whether the defendant was under the influence of narcotics when arrested;

(5) whether the defendant possessed other contraband or narcotics when arrested;

(6) whether the defendant made incriminating statements when arrested;

(7) whether the defendant attempted to flee;

(8) whether the defendant made furtive gestures;

(9) whether there was an odor of contraband;

(10) whether other contraband or drug paraphernalia were present;

(11) whether the defendant owned or had the right to possess the place where the drugs were found;

(12) whether the place where the drugs were found was enclosed;

(13) whether the defendant was found with a large amount of cash; and

(14) whether the conduct of the defendant indicated a consciousness of guilt.

*See Evans*, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id.*

The State must also prove that Purvis possessed the crack cocaine with intent to deliver. Circumstances considered by the courts in determining "intent to deliver" include (1) the nature of the location where the defendant was arrested, (2) the quantity of the drugs the defendant possessed, (3) the manner of packaging the drugs, (4) the presence or absence of drug paraphernalia (for use or sale), (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Garrett v. State*, 161 S.W.3d 664, 671 (Tex. App.–Fort Worth 2005, pet. ref'd). In *Mack v. State*, 859 S.W.2d 526 (Tex. App.–Houston [1st Dist.] 1993, no writ), the court considered the appellant's lack of paraphernalia for smoking the crack cocaine as evidence of his intent to deliver. *Id.* at 529.

## Discussion

When the officers came around the corner in their patrol car, Ramos saw Appellant quickly put something under the bench, which he alone occupied. The baggie containing twenty-one rocks of crack cocaine was found in the same spot where Ramos had seen Appellant apparently hiding something. Officer Massingill testified that he had watched the area continuously except for a few moments when he saw Appellant running away. He told the jury that it was very unlikely that anyone else could have placed the drugs under the bench between the time the officers arrived and Officer Ramos's retrieval of the drugs from under the bench.

The location on Cottonwood Street was a popular gathering place notorious for drug use and trafficking. A marijuana blunt lay in plain sight. Appellant's conduct in immediately approaching

4

Officer Ramos to engage him in conversation appears to have been an attempt to divert the officer's attention from the hidden crack cocaine, and is conduct that the jury might logically interpret as consciousness of guilt. The jury was entitled to draw the same conclusion from Appellant's manner of leaving the location, first stealing away, then breaking into a run down the street. Officer Massingill testified that it was very unlikely that anyone else would have stashed twenty-one rocks worth $400 or $500 in such a location. We conclude the circumstantial evidence connecting Appellant to the crack cocaine is sufficient evidence, both legally and factually, of Appellant's care, custody, or control of the drugs.

Appellant's intent to deliver may be inferred from the quantity of the drugs possessed. Officer Ramos testified that a typical user possessed only one to three rocks of crack cocaine at any one time. In Ramos's experience, the possession of twenty-one rocks indicated that the person possessing the cocaine intended to sell or deliver it. The front yard where Ramos found the drug was known as a place to obtain narcotics. The officers had made drug arrests there in the past. Measured against the appropriate standards, the evidence is legally and factually sufficient to support the jury's conclusion that Appellant possessed the crack cocaine with intent to deliver it. Appellant's first two issues are overruled.

### MOTION TO SUPPRESS

In his third issue, Appellant maintains that the cocaine he allegedly possessed was seized illegally as a result of a warrantless search of the front yard of the residence on Cottonwood Street. Therefore, Appellant argues the trial court erred in overruling his motion to suppress.

**Standard of Review**

In reviewing a trial court's decision on a motion to suppress evidence, the court of appeals gives almost total deference to the trial court's determination of historical facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). We sustain the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Id.*

**Applicable Law**

In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he or she personally has an expectation of privacy in the place searched and that the expectation is reasonable. *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S. Ct. 421, 428, 58 L. Ed. 2d 387 (1978); *Granados v. State*, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002). The defendant has the burden of presenting facts establishing a legitimate expectation of privacy, because he or she has greater access to the relevant evidence. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Criteria relevant in determining whether the accused's subjective expectation of privacy is reasonable so as to support standing to challenge the search include the following: (1) whether the alleged aggrieved person has a property or possessory interest in the thing seized or the place searched; (2) whether he was legitimately on the premises; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the search, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the property to some private use; and (6) whether his claim is consistent with historical notions of privacy. *Davis v. State*, 119 S.W.3d 359, 366–67 (Tex. App.–Waco 2003, pet. ref'd).

"Curtilage" is the land immediately surrounding and associated with the home and warrants the same protections that attach to the home. *Bower v. State*, 769 S.W.2d 887, 896 (Tex. Crim. App. 1989), *cert. denied*, 492 U.S. 927, 109 S. Ct. 3266, 106 L. Ed. 2d 611 (1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681, 685 (Tex. Crim. App. 1991); *accord Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim. App. 1979). Whether a particular area is included with the curtilage for purposes of the Fourth Amendment is determined by whether the defendant had a reasonable expectation of privacy in the area. *Bower*, 769 S.W.2d at 896. Factors to be considered include the proximity of the area to the house, the area's use, and the steps taken to protect the area from observation by passersby. *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139, 94 L. Ed. 326 (1987). A public place is not within the curtilage of a home. *Evans v. State*, 995 S.W.2d 284, 285-86 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd). A "public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE ANN. § 1.07(a)(40) (Vernon

6

Supp. 2007).

**Discussion**

Appellant had no property interest in the front yard of the home at 813 Cottonwood where Officer Ramos found the twenty-one rocks of crack cocaine. Jesse Reece testified that he owned and lived in the house at that address. Reece testified that people had used his front yard as a gathering place since 1990. Twenty–five to fifty people came on a regular basis to play dominos. He testified that Officer Ramos had talked to him ten or fifteen times about people selling dope in his yard. Although the yard was surrounded by a rudimentary fence, access to the yard was not restricted but open to the general public. There were benches and tables for dominos. Appellant exercised no dominion or control over the premises and had no right to exclude others from it. The front yard at 813 Cottonwood was a "public place." No one could have had a reasonable expectation of privacy at that location, certainly not Appellant. Appellant had no standing to challenge the search of the front yard at 813 Cottonwood Street. *See Granados*, 85 S.W.3d at 222-23. Appellant's third issue is overruled.

**VIDEOTAPE OF SEARCH LOST OR DESTROYED
THROUGH THE STATE'S NEGLIGENCE**

In his fourth issue, Appellant complains that the State's failure to preserve the videotape of the search and seizure deprived him of potentially exculpatory evidence necessary for his defense in violation of the due course of law provisions of Article I, Section 19 of the Texas Constitution.

Officer Ramos testified that a patrol car videotape had been made that would have shown Cottonwood Street with part of the intersection right at Cottonwood, "not a very wide span." Ramos explained the patrol car camera only filmed directly in front of the patrol car and that it would not have captured anything that occurred in the front yard of the Cottonwood address.

After Ramos's testimony, Appellant requested that the court order the State to produce the videotape. Ramos told the court that he had tried to locate the videotape, but he had been unable to do so. Ramos explained that it might have been one of the items misplaced when the special drug task force was disbanded. The trial court instructed the State to attempt to locate the videotape during a recess. The prosecutor reported to the court that the State's efforts to find the videotape were unsuccessful. The trial court overruled Appellant's oral motion for continuance based on

***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 3d 215 (1963). Appellant maintains the lost videotape was "potentially useful," but he does not contend its loss was the product of the State's bad faith. Appellant made no further objection nor did he ask for a jury instruction.

**Applicable Law**

"A criminal defendant has a right to inspect evidence indispensable to the State's case because that evidence is necessarily material to the defense of the accused." ***McBride v. State***, 838 S.W.2d 248, 251 (Tex. Crim. App. 1992). When the State loses or destroys evidence that is only "potentially useful," the defendant must show that the police acted in bad faith to establish a due process violation under the Fourteenth Amendment. *See **Arizona v. Youngblood***, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988). Texas constitutional provisions analogous to federal constitutional provisions are generally interpreted to have the same meaning. *See, e.g., **Cobb v. State***, 85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002); *but see **Heitman***, 815 S.W.2d at 682-83 (recognizing that states are free to reject federal holdings as long as state action does not fall below the minimum standards provided by federal constitutional protections and also may impose greater restrictions than those the Supreme Court holds to be necessary under federal constitutional standards). The Texas Constitution should be interpreted as providing broader protection than its federal counterpart only if such an interpretation has "firm support in state history or policy." ***Cobb v. State***, 85 S.W.3d 258, 267-68 (Tex. Crim. App. 2002). With one exception, Texas courts have applied the ***Youngblood*** bad faith requirement to claims arising under the Texas Constitution's due course of law provision. *See **Pena v. State***, 226 S.W.3d 634, 645-46 (Tex. App.–Waco 2007, writ granted) and the cases listed therein.

For a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). Ordinarily an objection at trial based solely on federal constitutional grounds will not preserve a state constitutional claim for review. ***Heidelberg v. State***, 144 S.W.3d 535, 542 (Tex. Crim. App. 2004). The legal basis of a complaint on appeal cannot vary from that raised at trial. ***Id.*** at 537.

8

**Discussion**

Appellant moved for a recess based on "*Brady*" to allow more time for the State to locate the missing patrol car videotape. Appellant did not invoke his state constitutional right to due course of law. He relied solely on his federal constitutional due process right under ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Appellant's reliance solely on federal constitutional grounds did not preserve for review his complaint that he was denied due course of law under the state constitution.

Moreover, the lost patrol car videotape was not shown to be exculpatory but only potentially exculpatory. It was not "indispensable" to the State's case, nor necessarily material to Appellant's defense. With one exception, Texas courts have followed the ***Youngblood*** rule holding that the failure to preserve potentially useful evidence is not a denial of due process of law unless the defendant can show bad faith on the part of the State. *See, e.g.,* ***McGee v. State***, 210 S.W.3d 702, 704 (Tex. App.–Eastland 2006, no pet.); ***Jackson v. State***, 50 S.W.3d 579, 588-89 (Tex. App.–Fort Worth 2001, pet. ref'd). Appellant concedes the videotape's loss was the result of the State's negligence, not its bad faith. Without a showing by Appellant of the State's bad faith, Appellant cannot establish a denial of his right to due course of law. Appellant's fourth issue is overruled.

**DISPOSITION**

The judgment of the trial court is ***affirmed***.

**BILL BASS**
Justice

Opinion delivered May 30, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice,*
*Twelfth Court of Appeals, Tyler, sitting by assignment.*

(DO NOT PUBLISH)

9
