COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-111-CR

 

 

ELIUD SALAZAR                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                           I.
INTRODUCTION

Appellant Eliud Salazar appeals his conviction
for driving while intoxicated.  In three
points, Salazar argues that the trial court erred by allowing testimony
regarding evidence he claims was destroyed by the police; that the trial court
erred by allowing the arresting officer to testify to Salazar=s
performance on the horizontal gaze nystagmus (HGN) test; and that the trial
court erred by admonishing defense counsel. 
We will affirm.








                                          II.
BACKGROUND

At approximately 7:00 p.m., January 6, 2007,
Charlotte BradfordC accompanied by her daughterCwas
driving along F.M. 407 in Denton County, Texas. 
Bradford said that she witnessed Salazar driving toward her Aat a
terrib[ly] high rate of speed.@  Bradford testified that Salazar drove his
vehicle out of his lane and fully into her lane to an extent that A[he] was
directly in front of me.@ 
Bradford stated that this happened at a time when there were roughly
only two car lengths between herself and Salazar.  Bradford said that she thought, Amy
daughter and I [were] going to die.@  Bradford said she then pulled over to the
right as far as she could and that Salazar also quickly turned to his right A[i]nches
before having a head-on [collision.]@  Bradford said that she Ahad
[come] to a stop@ and that she Asat
there [momentarily] to try to get my bearings together.@








As she sat, Bradford said she observed Salazar Agoing
all over the road@ before he left the road,
crashed through a fence, and drove erratically through a pasture.  Bradford=s
daughter said she witnessed Salazar travel Aoff the
road to the right side . . . and then all of a sudden I could see
headlights, and they were just bouncing all over the grass into that field, and
then all of a sudden it stopped.@  Bradford immediately drove to a nearby police
station where she and her daughter waived down a police officer and explained
what had just occurred.

Rebecca Nickelson said that she first noticed
Salazar driving erratically and at high speed when he pulled out in front of
her as she exited Interstate 35 onto F.M. 407. 
She said Salazar was traveling very fast and his tires were Asquealing@ as he
pulled away from the parking lot shared by a gas station and a liquor
store.  Nickelson recalled that Salazar=s
vehicle continued to separate from hers, so much so that she almost lost sight
of him.  By Nickelson=s
account,

As I topped the hill, I
realized I saw the same taillights at the bottom of the hill which starts an S
curve, and it is 35 miles an hour around that curve.  And I continued just going down, and as I hit
the S curve, there was billowing like rolls of dirt and pebbles just flying.

 

As Nickelson approached, she found Salazar=s
vehicle upside down.  Nickelson
positioned her car so that its headlights would illuminate Salazar=s
vehicle.  She saw Salazar crawl from the
driver=s seat,
out the back window, and lean against his vehicle.  Nickelson got out of her car and yelled, Aare you
okay, are you okay, can you hear me, are you okay[?]@  Nickelson said that Salazar did not
respond.  At this time multiple vehicles
arrived, including the police.








Police officer Sean Foley said that when he
arrived Salazar had a very disheveled appearance, his eyes were bloodshot, he
smelled of urine and had a urine stain on the front of his jeans, his speech
was Areal
thick tongued," and he had a strong smell of alcohol on his breath and Agenerally
from his person.@ 
Foley testified that he conducted standardized field sobriety tests,
including the HGN, the walk-and-turn, and the one-legged stand.  Defense counsel objected to the testimony regarding
the HGN test, arguing that the State had not properly established that Foley
was qualified to perform it.  The trial
court overruled the objection.

Foley said that Salazar admitted that he was
familiar with the field sobriety tests because of prior DWI convictions.  Foley testified that Salazar failed all three
tests.  Foley said that Salazar was Adefinitely
in the category of the more intoxicated people I have had to deal with in my
career, substantially impaired.@  A videotape from Foley=s patrol
car camera of Foley=s encounter with Salazar was
played for the jury at trial.

Foley arrested Salazar.  After his arrest, Salazar provided a breath
specimen at 8:48 p.m.  The breath
specimen showed 0.152 grams of alcohol per 210 liters of breath and 0.145 grams
of alcohol per 210 liters of breath.








During the trial, the state elicited testimony
regarding a beer bottle which was allegedly found on the side of the road
roughly 200 feet from where Salazar=s
vehicle came to rest in the pasture. 
Foley described the bottle as cold and partially wrapped in a bag, with
some condensation on the outside and a small amount of liquid inside.  Foley said that he took a picture of the
bottle and, although he did not know what he ultimately did with the bottle, it
was his department=s policy to Anot
seize alcoholic beverage containers as a standard practice.@  Defense counsel objected to this testimony
and to the admission of the photograph, claiming that the bottle was not near
Salazar=s
vehicle.  Both orally and by written
motion, defense counsel also argued that because the State had left the bottle
on the side of the road, they had effectively destroyed the bottle without
first allowing Salazar to independently test it.  Specifically, defense counsel argued:

I think that the state by
attempting to link this bottle and attempting to testify that it was of
condensation and cold is attempting to imply to the jury that this is somehow
connected with [] Salazar=s behavior.

 

If that had been done and that evidence had been preserved, obviously,
it could have been fingerprinted, could have been examined further but was
destroyed that night, or certainly left out there at the scene, which is
effectively under Pena an obstruction of potentially useful evidence and
certainly evidence that would be exculpatory at this point now that the state
has chosen to bring this matter up.

 

So I would request the court make the findings with regard to the
three‑step analysis, such as required under Pena, and then make those
findings as is required by both Pena 2 and Pena 3.  And I believe it warrants ‑‑ and
also subsequently move for a dismissal of the case based upon the loss or
destruction of this evidence.

 








The trial court overruled defense counsel=s
objection and denied his motion for dismissal.

The State also elicited testimony from Lori
Fuller, a technical supervisor for the Southwestern Institute of Forensic
Sciences.  The State questioned Fuller
regarding the equipment used to take Salazar=s breath
samples.  Defense counsel objected
multiple times during her testimony.  In
almost every instance, the trial court overruled the objection.  After the trial court overruled one of these
objections, defense counsel moved for a mistrial.  The trial court ordered the bailiff to escort
the jury from the courtroom and addressed defense counsel with the following
admonishment:

[T]hat is the fourth time
that you have just suddenly >I move for a mistrial.=  It hasn=t been preceded by a ruling which was in your
favor.  It hasn=t been preceded by any
sort of a precedent that would give you the right ‑‑ or me the
right to grant a mistrial, that I=m aware of. 
I believe that you=re simply doing it, one,
to aggravate me and you have succeeded. 
Secondly, I think you=re doing it to somehow influence the jury or make
them believe that something terrible has gone wrong when, in fact, it has not.

 

The next time you make a motion for a mistrial, I=m going to have the jury
sent out, I=m going to ask you to
very concisely explain the legal basis for your motion for a mistrial, and it
better not be because, Judge, you=re just stupidly wrong or something to that effect.

 








After further discussion regarding counsel=s
objection and trial exhibits, the jury was then brought back and the trial
proceeded.  The jury ultimately found
Salazar guilty of third-degree felony DWI and assessed punishment at seven
years=
incarceration.  The trial court sentenced
Salazar accordingly.  This appeal
followed.

                                           III.  DISCUSSION

A.     Preservation
of Evidence








In his first point, Salazar argues that the trial
court erred by overruling his objection to testimony regarding, and the
admission of, a photograph depicting a beer bottle on the side of the road near
where Salazar=s vehicle rolled over.  Salazar=s
argument is built on the premise that the officers in this case having left the
beer bottle by the side of the road was tantamount to the destruction of
potentially exculpating evidence. 
Specifically, Salazar argues that in accordance with the Waco Court of
Appeals=
decision in Pena v. State, this court should first hold that the Texas
Due Course of Law provision provides a greater level of protection than the
federal Due Process Clause.  226 S.W.3d
634, 637B53 (Tex.
App.CWaco,
2007) (holding that the Texas Due Course of Law provision provides a greater
level of protection with regard to lost or destroyed evidence than does the Due
Process Clause of the Fourteenth Amendment), overruled on other grounds
No. PD‑1411‑07, 2009 WL 928594, at *3 (Tex. Crim. App. Apr.8, 2009)
(APena IV@).  Relying on that premise, Salazar asks this
court to further hold that the beer bottle was subject to discovery; that the
State had a duty to preserve the beer bottle; and that the officers in this
case acted in bad faith by leaving the beer bottle on the side of the
road.  The State argues that the Texas
Due Course of Law Clause affords no greater protection than the federal Due
Process Clause.  Thus, the State argues,
this court should overrule Salazar=s first
point because there is no evidence that the officers in this case acted in bad
faith.








In determining whether the pre‑trial
destruction of evidence constitutes a denial of due process of law under the
United States Constitution, the Supreme Court draws a distinction between Amaterial
exculpatory evidence@ and Apotentially
useful evidence.@ 
See Arizona v. Youngblood, 488 U.S. 51, 57B58, 109
S. Ct. 333, 337 (1988).  A federal due
process violation occurs whenever a state suppresses or fails to disclose Amaterial
exculpatory evidence,@ regardless of whether the State
acted in bad faith.  Illinois v.
Fisher, 540 U.S. 544, 547, 124 S. Ct. 1200, 1201 (2004).  But the Supreme Court has held that if a
defendant seeks to prove a federal due process violation based on a state=s
destruction of Apotentially useful evidence,@ the
defendant must show that the State acted in bad faith in destroying the
evidence.  Fisher, 540 U.S. at 547B48; Youngblood,
488 U.S. at 57B58.  In Youngblood, the Court described Apotentially
useful evidence@ as evidentiary material Aof which
no more can be said than that it could have been subjected to tests, the
results of which might have exonerated the defendant.@  Youngblood, 488 U.S. at 57B58.








The Texas Constitution provides that A[n]o
citizen of this State shall be deprived of life, liberty, property, privileges
or immunities, or in any manner disfranchised, except by the due course of the
law of the land.@ 
Tex. Const. art. I, ' 19.  A number of Texas courts of appeals,
including this court, have held that the Texas Constitution does not provide a
greater level of protection than the United States Constitution regarding the
State=s loss
or destruction of evidence in a criminal prosecution.  See Jackson v. State, 50 S.W.3d 579,
588B89 (Tex.
App.CFort
Worth 2001, pet. ref=d); see also State v. Vasquez,
230 S.W.3d 744, 750B51 (Tex. App.CHouston
[14th Dist.] 2007, no pet.); McGee v. State, 210 S.W.3d 702, 705 (Tex.
App.CEastland
2006, no pet.); Salazar v. State, 185 S.W.3d 90, 92 (Tex. App.CSan
Antonio 2005, no pet.); State v. Rudd, 871 S.W.2d 530, 533 (Tex. App.CDallas
1994, no pet.); Saldana v. State, 783 S.W.2d 22, 23 (Tex. App.CAustin
1990, no pet.).  But Salazar asks this
court to abandon our own holding and the holding of the other Texas courts of
appeals in favor of adopting the Waco Court of Appeals= opinion
holding that the Texas Due Course of Law Clause affords greater protection than
the federal Due Process Clause.  See
Pena v. State, 166 S.W.3d 274 (Tex. App.CWaco
2005) (APena I@), vacated
by 191 S.W.3d 133, 145B46 (Tex.
Crim. App. 2006) (vacating and remanding opinion back to court of appeals) (APena II@); see
also Pena, 226 S.W.3d at 637B53 (APena III@).

In Pena I, the Waco Court of Appeals held
that the Due Course of Law Clause provides a greater level of protection than
the Due Process Clause.  See U.S.
Const. amends. V; XIV, ' 1; Tex. Const. art. I, ' 19;
Pena I, 166 S.W.3d at 278B82.  The court of criminal appeals held that the
Waco Court of Appeals erred by reviewing unassigned error regarding the Due
Course of Law Clause without first requesting additional briefing.  See Pena II.  On remand, the Waco Court of Appeals in Pena
III engaged in a lengthy analysis of the two provisions and again held that
the Due Course of Law Clause provides a greater level of protection than the
Due Process Clause.  See Pena III.  The court of criminal appeals reversed,
holding that the defendant had failed to preserve the argument concerning
whether the Due Course of Law Clause provides a greater level of protection
than the Due Process Clause.  See Pena
IV.  Thus, the court of criminal
appeals has not addressed whether our state=s
Constitution provides greater protection than its federal counterpart.  Notably, the Supreme Court of Texas has
stated that the language of these two clauses is Anearly
identical@ and that there is no meaningful
distinction between Adue course@ and Adue
process.@  See Univ. of Tex. Med. Sch. at Houston v.
Than, 901 S.W.2d 926, 929 (Tex. 1995).








Other than the Waco Court of Appeals=
opinions in Pena I and Pena III, no other Texas appellate court=s
opinion contradicts this court=s
precedent that the two provisions provide the equivalent protection.  See Jackson,  50 S.W.3d at 588B89; see
also State v. Vasquez, 230 S.W.3d 744, 751 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (declining to follow Pena I or Pena III).  After considering the opinions in Pena I
and Pena III, we respectfully decline to follow them.  We agree with our previous holding and the
holding of other Texas courts of appeals that the Due Course of Law Clause
provides the same protection as the Due Process Clause regarding the State=s
destruction of potentially useful evidence in a criminal prosecution.  Therefore, to show a violation, Salazar must
demonstrate that the State acted in bad faith. 
See Jackson, 50 S.W.3d at 588B89.

Here, assuming that Foley leaving the beer bottle
at the scene was tantamount to the destruction of evidence, there is no
evidence that Foley=s having left the beer bottle
was the result of bad faith.  Foley
testified that it was his department=s policy
to Anot
seize alcoholic beverage containers as a standard practice.@  There is no evidence in the record to
contradict Foley=s testimony.  Accordingly, we conclude and hold that
Salazar cannot demonstrate bad faith, and we overrule his first point.








B.     Horizontal
Gaze Nystagmus Test

In his second point, Salazar argues that the
trial court erred by failing to sustain his objection to Foley=s
testimony regarding the HGN test. 
Salazar=s argument is that the State
failed to establish that Foley was qualified to perform the HGN test and that
therefore it was harmful error to allow Foley to testify concerning Salazar=s
performance on the HGN test.  We
disagree.

Whether a particular witness qualifies as an
expert is a decision to be made by the trial judge, and the trial judge has
broad discretion in this area.  Sterling
v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), cert. denied,
501 U.S. 1213 (1991); Kerr v. State, 921 S.W.2d 498, 502 (Tex. App.CFort
Worth 1996, no pet.).  A trial court=s
decision in this area will not be disturbed absent an abuse of discretion.  Sterling, 800 S.W.2d at 521.  For testimony concerning a defendant=s
performance on the HGN test to be admissible, it must be shown that the witness
testifying is qualified as an expert on the HGN test.  Kerr, 921 S.W.2d at 502.








In this case, Foley testified that he had been a
police officer since 1992.  Foley said
that in 1995 he attended an extensive field sobriety testing school.  As part of the training, he conducted field
sobriety tests on multiple test subjects. 
He testified that he is certified to administer field sobriety
tests.  Foley said that in the last year
he had attended two four-hour standard field sobriety courses.  Foley testified that while at these classes,
he had practiced the HGN test roughly fifty times.  He also said that he had performed the HGN
test between 200 and 300 times in the field. 
Foley also fully explained the technique for administering the HGN
test.  We conclude and hold that the
trial court did not abuse its discretion by overruling Salazar=s
objection to Foley=s testimony regarding Salazar=s
performance on the HGN test.  We overrule
Salazar=s second
point.

C.     Trial
Judge=s Comments to Defense Counsel








In his third point, Salazar complains that the
trial judge=s comments that defense counsel
was to provide a Avery concise legal basis@ for any
future motions for mistrial  placed
Salazar Aat an
unfair disadvantage and undermined [defense counsel=s]
zealous representation,@ thereby denying him his Aright to
due process and a fair trial.@  Salazar admits that Athere
are no cases directly on point with the issue at hand.@  Nonetheless, Salazar likens the trial judge=s
comments in this case to a trial judge=s
attempts to, within its discretion, regulate the duration of argument to the
jury or move its docket along.  See
Dang v. State, 154 S.W.3d 616, 621B22 (Tex.
Crim. App. 2005) (holding that trial court abused its discretion in limiting
juvenile defendant=s closing argument to twenty
minutes).  And, Salazar argues, the trial
court abused its discretion.  See id.  The State counters that Salazar has failed to
preserve this error because he never specifically objected that the trial court=s
admonishment Awould interfere [] in any way
with [defense counsel=s] zealous representation.@  See Tex. R. App. P. 33.1.  We will assume without deciding that Salazar
has preserved this error.

A trial court has broad discretion in maintaining
control and expediting the trial.  Jasper
v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).  But the trial court shall maintain an
attitude of impartiality throughout the trial. 
Hoang v. State, 997 S.W.2d 678, 680 (Tex. App.CTexarkana
1999, no pet.).  We agree with Salazar=s
characterization of the trial judge=s
comments in this case as an attempt to expedite and maintain control over the
trial and exercise reasonable control over the mode and order of the
presentation of evidence.  See Jasper,
61 S.W.3d at 421.  But we do not agree
that the trial court=s admonishment to defense
counselCmade
outside the presence of the juryCin any
way denied Salazar his right to due process and a fair trial; rather, the
comments appear to be simply an attempt to avoid the needless consumption of
time.  See Hoang, 997 S.W.2d at
681B82
(holding that trial court=s comments to defense counsel to
A[q]uit
being repetitious@ and A[l]et=s get to
the point@ were acceptable attempts to
move the trial along).  We overrule
Salazar=s third
point.








                                          IV.  CONCLUSION

Having overruled all three of Salazar=s
points, we affirm the trial court=s
judgment.

 

BILL
MEIER

JUSTICE

 

PANEL:  LIVINGSTON, WALKER, and MEIER, JJ.

 

    WALKER, J. concurs without opinion.

 

PUBLISH

 

DELIVERED:  July 23, 2009