**Opinion filed May 27, 2011**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-09-00175-CR

_____

## JAMES LANDON ROBERTS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19795**

## M E M O R A N D U M   O P I N I O N

The jury convicted James Landon Roberts of two counts of sexual assault and assessed his punishment at confinement for twelve years for each count – to run concurrently.  We affirm.

*Issues*

Appellant presents fourteen issues on appeal.  In the first three issues, he complains that the prosecutor improperly asked "commitment" questions during voir dire.  In the next seven issues, he contends that the trial court erred in excluding assorted evidence.  In the eleventh and twelfth issues, he asserts that the trial court should have granted his requests for mistrial based

upon the State's destruction of a taped interview of the victim and upon the State's introduction of appellant's use of a controlled substance in violation of a motion in limine. In his thirteenth issue, appellant argues that the trial court erred in admitting at the guilt/innocence phase of trial evidence of appellant's prior arrests. In his final issue, appellant asserts that the trial court should have granted appellant's motion for new trial based upon the State's outrageous conduct.

*Background Facts*

Appellant does not challenge the sufficiency of the evidence. The record shows that appellant and his wife, Trinity Roberts, were codefendants in this case and were tried together for the offenses of sexual assault. The victim in this case was Trinity's fourteen-year-old cousin, who had come to spend the week with the Roberts. Appellant was convicted of two of the five counts with which he had been charged, and Trinity was convicted of one of two counts. Trinity received community supervision and has not appealed. Appellant's convictions are supported by evidence showing that he committed sexual assault by causing his sexual organ to penetrate the victim's mouth on two separate occasions.

*Voir Dire Commitment*

Appellant argues that three different questions asked by the prosecutor constituted improper attempts to commit the veniremembers to answer an issue a certain way after learning a particular fact. The first such alleged attempt occurred when the prosecutor, in asking the potential jurors to discount preconceived notions about defendants, stated: "[Y]ou won't limit me to, well, married couples can't be Co-Defendants in a sexual assault, that just doesn't happen? Is everybody here going to keep an open mind to that, not have any preconceived notions about that?" Before anyone responded, appellant objected that the prosecutor was attempting to contract with the jurors, and the prosecutor responded that he was "asking about preconceived notions and dispositions to discount based on those preconceived notions." The trial court overruled appellant's objection and instructed the veniremembers that they had not heard the evidence and that, to be fair jurors, they would have to keep an open mind until all the evidence had been presented. The trial court further explained that voir dire questions are merely "hypothetical questions to give you what-if scenarios to get a sense of how you might feel about things. But you are under no obligation -- there will be no contracts with anyone about what you're going to do or not do other than to follow the law and to be fair and impartial jurors in your decisions." The prosecutor then continued, "Does anybody on the left side have

preconceived notions about who Defendants can be in sexual assault cases that would prevent you from sitting fairly and impartially in this case?"

The second alleged commitment occurred when the prosecutor asked: "[D]oes anybody have any preconceived notions about how a victim is going to act like to the extent that a person takes the stand and doesn't act that way, then it is going to cause you to have some sort of bias or prejudice because of your preconceived notions?" The third instance occurred when the prosecutor asked "how many witnesses" the veniremembers would expect to hear from "about the direct circumstances of what happened" in a sexual assault case. The trial court again overruled appellant's objections.

Appellant correctly states that an attorney cannot attempt to bind or commit prospective jurors to a particular verdict or result based on a hypothetical set of facts. *See Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). The purpose for prohibiting such questions is "to ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). To determine whether a voir dire question called for an improper commitment, we must first determine whether the particular question was in fact a commitment question and, if so, then determine whether it was an improper one. *Lee v. State*, 206 S.W.3d 620, 621 (Tex. Crim. App. 2006). The questions asked by the prosecutor in this case were not commitment questions because the possible answers would not have indicated that the jurors would resolve or refrain from resolving an issue in this case based upon a particular fact. Issues One, Two, and Three are overruled.

*Exclusion of Evidence*

In the next seven issues, appellant complains of the trial court's exclusion of the following evidence: a photograph purportedly depicting a member of the victim's family using marihuana in the victim's presence; photographs depicting the victim wearing an "I Love Boobs" breast cancer awareness T-shirt at appellant's house, which appellant suggests was "sexually suggestive"; testimony regarding an ongoing dispute between appellant and the victim's family about their use of marihuana; testimony of the victim's mother's drug use; testimony indicating that a friend of the victim's mother had recently died from a drug overdose; evidence that the victim's mother had been arrested and had received deferred adjudication for possession of marihuana; and testimony from Trinity regarding drug use by the victim's family and an ongoing

dispute over such drug use. Appellant argues that the proffered evidence was "in essence, evidence of the character of the victim" and tended "to prove that the child had a character trait of being licentious." Appellant asserts that the victim's "licentious character" should be admissible to rebut the false impression left by the State's evidence that the victim was not sexually aggressive and that she was forced or lured into the conduct.

A trial court's decision to admit or exclude evidence is reviewed on appeal for an abuse of discretion. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court will not reverse a trial court's ruling excluding evidence unless that ruling falls outside the zone of reasonable disagreement. *Burden*, 55 S.W.3d at 615.

Evidence regarding the sexual history or promiscuity of a sexual assault victim is not admissible unless (1) it is evidence of a specific instance of conduct that is necessary to rebut or explain scientific or medical evidence offered by the State, that occurred with the accused and relates to the issue of consent,[1] that relates to the motive or bias of the victim, that is admissible impeachment evidence showing a prior conviction, or that is constitutionally required to be admitted and (2) its probative value outweighs the danger of unfair prejudice. TEX. R. EVID. 412; *see Delapaz v. State*, 297 S.W.3d 824, 827 (Tex. App.—Eastland 2009, no pet.). The excluded evidence, with which appellant attempted to show the victim's "licentious character," was properly excluded as it did not fall into any of the Rule 412 exceptions. Furthermore, the photographs of the victim wearing an "I Love Boobs" T-shirt were excludable under either TEX. R. EVID. 402 as irrelevant or TEX. R. EVID. 403 because the probative value of the photographs was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Moreover, based upon our review of the record, we cannot agree with appellant's contention that the State left a false impression about the victim or the incident. The victim testified that she was not threatened or physically forced to do anything and that she performed oral sex on appellant and Trinity without being forced or requested to do so. The trial court permitted testimony showing that the victim acted in a sexually aggressive manner toward appellant and that no force was used against the victim.

---

[1]We note that consent was not an issue in this case since the victim was a child. *See* TEX. PENAL CODE ANN. § 22.011 (Vernon 2011).

4

With respect to the victim's motive or bias, at the time Trinity was asked about the discord caused by the victim's family's use of drugs, the jury had already heard evidence that there was discord and conflict between the victim's family and appellant. Trinity was allowed to testify that there was animosity between her family and appellant because of the behavior of her family (including the victim's parents) and appellant's criticism of their behavior. The evidence also showed that the victim was mad at appellant and Trinity and had argued with them. Thus, appellant was not prevented from showing that the victim and other family members were biased and had a motive to testify against appellant. It was within the trial court's discretion to determine that further information regarding the use of drugs as the behavior that was criticized was not admissible under the Rule 403 balancing test. Evidence indicating that the victim's family members used marihuana or that a friend had died of a drug overdose was not shown to be relevant to any issue in this case, and the trial court was within its discretion in excluding such evidence under Rule 402 or Rule 403. Evidence indicating that the victim's mother had been arrested for possession of marihuana and had been placed on deferred adjudication community supervision was inadmissible. TEX. R. EVID. 608(b), 609. The trial court did not abuse its discretion in excluding the proffered evidence. Issues Four, Five, Six, Seven, Eight, Nine, and Ten are overruled.

*Destruction of Recorded Interview*

In his eleventh issue, appellant contends that the trial court erred in denying a motion for mistrial based upon a detective's intentional destruction of a recording of her initial interview with the victim. Detective Lana Guthrie testified that she had recorded an interview with the victim and used the recording to make her notes, that she does not keep a copy of such recordings, and that she had destroyed the recording prior to any charges being filed. Appellant requested a mistrial, and the trial court ultimately denied appellant's motion for mistrial.

In addressing whether the pretrial destruction of evidence constitutes a denial of due process of law, the Supreme Court has drawn a distinction between "material, exculpatory evidence" and "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57, 58 (1988). A due process violation occurs when the State suppresses or fails to disclose material, exculpatory evidence, regardless of whether the State acted in bad faith. *Id.* However, when the State has destroyed potentially useful evidence, as opposed to material exculpatory evidence, the defendant must show that the State acted in bad faith in destroying the evidence. *Id.*; *Ex parte*

*Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *McGee v. State*, 210 S.W.3d 702, 704 (Tex. App.—Eastland 2006, no pet.). The presence or absence of bad faith for purposes of due process turns on the State's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Youngblood*, 488 U.S. at 56 n.*; *California v. Trombetta*, 467 U.S. 479 (1984); *Napper*, 322 S.W.3d at 230-34.

Appellant has not shown that the recording was destroyed in bad faith. The evidence did not show that the recording would have been exculpatory in any way or that Detective Guthrie had an improper motive in destroying it, such as animus toward appellant or a conscious effort to suppress evidence. *See Napper*, 322 S.W.3d at 231-34. Appellant's eleventh issue is overruled.

*State's Violation of Motion in Limine*

In the twelfth issue, appellant asserts that the trial court erred in denying the motion for mistrial that appellant made after the State introduced, in violation of a motion in limine, evidence that appellant used a controlled substance. The victim testified that appellant took "codeine -- or his medicine with alcohol" and that Trinity smoked marihuana. Appellant immediately objected. The trial court sustained appellant's objection, sanctioned the prosecutor, denied appellant's motion for mistrial, and instructed the jury to disregard. A prompt instruction to disregard ordinarily cures error caused by an improper question and answer regarding an extraneous offense. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000).

Under the facts in this sexual assault case, the trial court could have reasonably concluded that the victim's testimony regarding appellant taking codeine was not so inflammatory as to be incurable by an instruction to disregard. Thus, the trial court did not abuse its discretion in overruling appellant's motion for mistrial. Appellant's twelfth issue is overruled.

*Evidence of Appellant's Prior Arrests*

In the next issue, appellant contends that the trial court erred in admitting evidence of his prior arrests. After determining that appellant opened the door on that topic and created a false impression, the trial court permitted the State to cross-examine appellant regarding his seven prior arrests. Appellant had only one prior conviction, which was for the misdemeanor offense of driving while intoxicated. Generally, evidence of such extraneous offenses or bad acts is not admissible. TEX. R. EVID. 404(b), 608, 609. However, when the accused testifies and, by his direct testimony or gratuitously on cross, leaves a false impression of his lack of involvement

6

with the police, the trial court may permit the State to correct the false impression by showing the accused's prior involvement with the police. *Hammett v. State*, 713 S.W.2d 102, 105-06 (Tex. Crim. App. 1986); *Ex parte Carter*, 621 S.W.2d 786, 788 (Tex. Crim. App. 1981); *see Daggett v. State*, 187 S.W.3d 444, 453 & n.24 (Tex. Crim. App. 2005).

The record shows that appellant had testified that his interview with Detective Guthrie was a horrible experience. During cross-examination, the prosecutor surmised that the experience "wasn't [horrible] because of Mrs. Guthrie holding a gun to your head or locking you in a room or anything such as that, was it?" Appellant gratuitously answered: "I'm not the type of person to continuously deal with law enforcement." The trial court subsequently allowed the State to correct the false impression left by appellant regarding his lack of contact with law enforcement. The State did not spend much time developing the evidence, and it also elicited the fact that the prior arrests were for less serious crimes involving property, theft, and alcohol, which were unlikely to impress the jury in some irrational way in this sexual assault case. The trial court did not abuse its discretion in allowing the State to ask appellant about his prior arrests after appellant opened the door with his testimony or in determining that the probative value of such evidence was not substantially outweighed by the danger of unfair prejudice. *See* Rule 403; *Daggett*, 187 S.W.3d at 453 & n.24. Appellant's thirteenth issue is overruled.

### Misconduct

In his final issue, appellant argues that the trial court erred in not granting a new trial based upon the outrageous conduct committed by a member of the district attorney's staff. Appellant contends that the victim coordinator for the district attorney's office instructed the victim as follows, "Well, whatever you've got to do to get it out, do it." The defense witness who overheard these instructions to the victim could not say exactly what the term "it" referred to, but she said that the statement was made during a conversation concerning what the victim could and could not say in the courtroom.

An appellate court reviews a trial court's ruling on a motion for new trial using an abuse-of-discretion standard of review. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We must view the evidence in the light most favorable to the trial court's ruling and uphold that ruling if it was within the zone of reasonable disagreement. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* In the present case, we cannot hold that the trial court abused

7

its discretion in denying the motion for new trial because the evidence was conclusory and speculative as to the State's misconduct or violation of a court order. Contrary to appellant's contention, the witness did not testify that the victim coordinator instructed the victim to inject inadmissible matters into evidence. *See generally Stahl v. State*, 749 S.W.2d 826 (Tex. Crim. App. 1988) (identifying reversible prosecutorial misconduct). Appellant's fourteenth issue is overruled.

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


May 27, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel[2] consists of: Wright, C.J.,
McCall, J., and Hill, J.[3]

---

[2]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[3]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.